ARETUS B. PENNY *vs.* SUMNER B. WALKER.

*Arrest—mail-carrier liable to, on criminal process.*

A person who is at the time engaged in carrying the United States mail is liable to arrest, by an officer duly qualified and holding a warrant for his arrest for an offence against the law of the state; though the crime be not a felony, but a violation of the liquor law, R. S., c. 27.

The mail-carrier cannot justify, by virtue of his own public employment, an assault upon the officer who attempts to serve such warrant.

ON EXCEPTIONS.

TRESPASS *vi et armis,* for an alleged assault and battery. At the time of the alleged assault, the defendant was a mail-carrier, and was engaged in conveying the United States mail; and the plaintiff was a constable of the city of Auburn, duly authorized to serve criminal process, and had a complaint and warrant for the arrest of the defendant, wherein the defendant was charged with having intoxicating liquors, kept and deposited, with intent to sell the same in violation of law. The defendant contended that the plaintiff had no legal right to arrest him while he was in the discharge of his duty, in carrying the United States mail, and requested the presiding judge so to instruct the jury. But the presiding judge instructed the jury that the defendant was legally liable to arrest on a charge of any criminal offence, although he was engaged at the time, in carrying the United States mail. The verdict was for the plaintiff for $261.

To the foregoing instructions and refusal to instruct, the defendant excepted.

*Record & Hutchinson* for the defendant, cited the act of March 3, 1825, to be found in 4 U. S. Statutes at large, (Little and Brown's edition) c. 64, pages 102, 114, especially § 21, prohibiting a desertion of the mail by any person having it in charge.

*Frye, Cotton & White* for the plaintiff.

BARROWS, J. The single question is whether a mail-carrier, who is at the time engaged in conveying the United States mail, is justified in using force to repel an officer duly qualified and having a legal warrant for his arrest to answer for an offence against a state law, when the charge (which was the keeping of spirituous liquors designed for unlawful sale) is neither treason, felony, nor a breach of the peace.

This defendant, in an action of trespass for an assault and battery committed upon such officer, requested the presiding judge to instruct the jury that the officer had no legal right to arrest him under these circumstances. The request was refused and the jury were instructed that "the defendant was legally liable to arrest on

a charge of any criminal offence, although he was engaged at the time in carrying the United States mail."

To support his request and his exceptions the defendant relies upon the provisions of the act of congress passed March 3, 1825, which is a consolidation of the various previous acts relating to the establishment and regulation of the post office department and prescribes among other things the oath or affirmation to be administered to every person employed in the care, custody, or conveyance of the mail, and imposes a fine not exceeding $500 upon any one, who being in charge of the mail shall quit or desert it before delivering it into the post office at the termination of the route, or to some known mail-carrier or post office agent authorized to receive it; and a fine not exceeding $100 upon any one who knowingly and wilfully obstructs or retards the passage of the mail or of any driver or carrier, or of any horse or carriage carrying the same.

It may be regarded as certain that it was no part of the design of congress in these provisions to afford to the employees of the post office department, or to mail contractors and their servants, immunity from arrest at any time for such offences as they might commit against the criminal law of the states in which their routes lie.

We find no case in which the precise question here presented has been raised.

But it was held in the case of the *U. S.* v. *Hart*, Peters C. C. R., 390, that the act was not to be so construed as to prevent the arrest of the driver of a carriage in which the mail is conveyed when he is driving through a crowded city at such a rate as to endanger the lives of the inhabitants, i. e., when he was proceeding at a greater rate of speed than the framers of a city ordinance deemed consistent with safety.

And it was the opinion of the attorney general (5 Opin. 554) that it could not be held to conflict with a municipal ordinance prohibiting the passage of railroad cars through the limits of a city at a greater speed than six miles an hour.

If the progress of the mail may be lawfully arrested or retarded in conformity with municipal ordinances of this description, it is not easy to see why such incidental interruption as may arise from the occasional arrest of a mail driver for the violation of other laws designed to restrain evils pernicious to the public welfare, should not also be tolerated.

The safe carriage and prompt delivery of the mails are matters which mainly concern the inhabitants of the communities among whom they are distributed.

No needless interference with them can be allowed; but the public interest is, to say the least, quite as great in the preservation of sobriety and good order.

We think it would be a greater evil to hold the carriers of the mail a class privileged to resist the criminal process of the state in the hands of officers duly qualified, than it would be to incur the risk of the brief and infrequent detention of the mail when its carriers are found liable to arrest for criminal offences. This defendant claims to intrench himself behind such supposed privilege in order to establish a defence to a suit, which of itself imports a breach of the peace on his part, although the charge upon which the plaintiff arrested him was not of that character. We think such a claim cannot be allowed.

It is not readily perceived how the mail carrier could be held liable to the penalty for quitting or deserting the mail in his charge, by yielding that implicit submission to legal process which the law requires of all citizens, unless it were because his own criminal misconduct had made him liable to such process. He must see to it that he places himself in no such dilemma.

The penalty imposed by the act upon those who knowingly and wilfully obstruct or retard the mail, must be ample protection if he were harassed with malicious prosecutions for trifling offences, such as the counsel suggests as likely to multiply if he is held liable to arrest for anything short of felony.

The few cases in which questions bearing any analogy to that now presented have been discussed, have been almost exclusively cases of indictments under the last named provision.

We know of none where the indictment has been sustained for an arrest on criminal process. In *U. S.* v. *Kirby*, 7 Wallace, 482, the right of the state officer to arrest upon a charge of felony is emphatically sustained. The line of reasoning in that opinion would apply equally well in all cases of criminal offences affecting the public welfare.

The only reasonable distinction which can be made seems to be between arrests upon civil and criminal process. To enforce merely private rights, the detention of the mail by an officer seems to have been held unwarrantable in *U. S.* v. *Harvey*, 8 Law Reporter, 77. Just here we think the line should be drawn.

The mail carrier must not be detained upon any civil suit or claim for debt or damage, while in the discharge of his duty to the public, but we think he is legally liable to arrest on a charge of any criminal offence ; and this was precisely the ruling which is the subject of complaint.     *Exceptions overruled.*

APPLETON, C. J., WALTON, DICKERSON, VIRGIN and PETERS, JJ., concurred.