[Crim. No. 1186.   Third Appellate District.—January 30, 1932.]

In the Matter of the Application of DAN EMMETT for a Writ of Habeas Corpus.

Inman & West for Petitioner.

U. S. Webb, Attorney-General, J. Charles Jones, Deputy Attorney-General, Neil R. McAlister, District Attorney, and Guy P. Johnson, Assistant District Attorney, for Respondent.

PLUMMER, J.—This cause is before us upon the application of the above-named petitioner for discharge after trial and conviction on a charge of battery in the police court of the city of Sacramento.

The record before us shows that by a complaint filed in the Justice's Court of the City of Sacramento, on the eleventh day of May, 1931, the above-named petitioner was accused of the crime of battery. The date of the arrest in pursuance of this complaint does not appear in the record, but thereafter, and on the eighteenth day of May, 1931, the petitioner appeared in court with his counsel, whereupon the trial of petitioner upon said charge was continued until May 20, 1931. On May 20, 1931, the petitioner, together with his counsel, appeared in court and the sole plea of "not guilty" was entered. Trial on the charge referred to was set for June 10, 1931. Thereafter trial was had before a jury in said court and a verdict of "guilty" returned by the jury, sentence being pronounced in accordance therewith by the judge of said court imposing a fine of one hundred dollars, with an alternative in jail in the event that said fine be not paid.

The record shows that the occurrences incident to, and attendant upon, the commission of the offense for which the

petitioner was arraigned and tried, occurred on or about the ninth day of May, 1931, while the petitioner was an assemblyman representing the fiftieth assembly district. On the ninth day of May, 1931, the legislature of the state of California was in session. Whether any warrant of arrest following the filing of the complaint charging the petitioner with battery, as herein stated, was served upon the petitioner, or whether he appeared in court voluntarily, does not appear by the record. However, the time of the petitioner's appearance and entering a plea was five days after the adjournment of the legislature.

Section XII of Ordinance 304, fourth series, of the city of Sacramento, with reference to traffic and the control thereof on the streets of said city, reads as follows: ''At intersections where traffic is directed by a traffic or police officer, or by a traffic 'stop and go' signal, it shall be unlawful for any pedestrian to cross the roadway, other than with released traffic.'' The ordinance further provides that anyone violating the provisions of said section is guilty of a misdemeanor.

On the ninth day of May, 1931, the petitioner in this action was crossing L Street at its intersection with Eleventh Street, traffic on said intersection being then and there controlled by a traffic officer. It appears that the petitioner, disregarding the provisions of the ordinance regulating traffic upon said intersection, attempted to, and did cross the intersection other than with the course of the traffic then and there released by the officer having charge thereof. Observing the attempted crossing, and crossing of said intersection by the petitioner, the officer in charge blew his whistle and directed the petitioner to desist from his attempt to cross the intersection contrary to the course of the traffic then released, but the petitioner then and there failed to do so, and upon crossing the street was stopped by the officer in charge of the intersection and asked his name, the officer then and there taking a note-book from his pocket preparatory to writing down the name of the person whom he had observed crossing the intersection contrary to the course of the traffic, and who had disregarded his warning signals not to do so. The petitioner produced from his pocket a card on which was printed his name, together with the

designation of the fact of his being an assemblyman from the fiftieth assembly district. The sufficiency of this identification was questioned by the officer, who stated that he was not satisfied, and requested further identification, the petitioner stating that that was all the identification he would give, and started to leave the officer. The officer thereupon took hold of the petitioner. (At this point there is a conflict of the testimony, the petitioner stating that the officer took hold of his right hand and twisted it so as to injure one of his fingers, the officer stating that he took hold of the petitioner by the arm and did not touch his hand.) At this juncture the petitioner struck the officer in the face. The extent of the injury inflicted being immaterial, we do not give further details.

Following this incident, the complaint to which we have referred was filed, warrant issued and trial had upon the plea of not guilty. Upon this hearing it is contended that, being a member of the legislature, the petitioner was exempt from arrest, and likewise, it is further contended that the acts of the officer in detaining the petitioner prior to the assault by the petitioner upon the officer, constituted an arrest. Be that as it may, the record shows that the petitioner was not tried for any violation of the traffic ordinance of the city of Sacramento, but was tried for the crime of battery.

On the part of the respondent, it is argued that upon this hearing the court has no power to go behind the return or to examine into the record further than to ascertain from the face thereof for what offense the petitioner was tried, and whether or not the jurisdictional facts appear. On the other hand the petitioner cites a number of cases where the exception to the rule has been followed and the record has been looked into for the purpose of determining jurisdictional questions, and in this action, involving sections of the Constitution, it is urged that it is our duty to inspect the whole record, including the testimony, to determine the issues tendered for our consideration.

By reason of the conclusions at which we have arrived, we deem it unnecessary to analyze the different decisions as to just how far a court may go in looking into a record upon *habeas corpus* proceedings. This statement is based principally upon the fact that the docket of the justice's court

discloses that the only issue tendered for determination upon the trial of the petitioner was whether the defendant was or was not guilty of battery. The plea entered by the petitioner, as we have stated, simply was "not guilty". Whether the battery of which the petitioner was found guilty was or was not an act performed in necessary self-defense was a question of fact for the jury.

Section 836 of the Penal Code, so far as applicable to this case, reads: "A peace officer may make an arrest in obedience to a warrant delivered to him, or may, without a warrant, arrest a person—1. For a public offense committed or attempted in his presence."

■ Violation of the city ordinance to which we have referred is a public offense and a misdemeanor, and being committed in the presence of a peace officer, the right to arrest the person so committing the offense then and there immediately arose and existed. An officer's duty to arrest when a misdemeanor is committed in his presence is just as clear and binding as though a warrant were in his hands commanding the performance of such duty. ■ It is contended, however, that, as the petitioner was a member of the legislature, the arrest was unlawful, and the petitioner had a right to resist the unlawful arrest. This, upon the theory that section 11 of article IV of the Constitution applies. That section reads: "Members of the legislature shall, in all cases except treason, felony and breach of the peace, be privileged from arrest, and shall not be subject to any civil process during the session of the legislature, nor for fifteen days next before the commencement and after the termination of the session." This section is somewhat broader than section 6 of article I of the Constitution of the United States, which provides, "that senators and representatives shall, in all cases except treason, felony and breach of the peace, be privileged from arrest during their attendance at the session of their respective Houses, and in going to, and returning from the same", etc. We think, however, the only difference in the two sections is the fact that members of the legislature are exempt from civil process, and that it was not the intent of the framers of the state Constitution to broaden the scope of the exemption of members of the legislature from arrest in criminal cases.

Under the state Constitution a summons or subpoena cannot be served upon a member of the legislature during the prohibited period. The two sections are almost identical until we reach the language in our state Constitution, which exempts from civil process, just as we have stated.

In the further consideration of this case we have three questions to answer: 1. Is a member of the legislature exempt from arrest where the charge is the commission of a criminal offense? 2. Is the arrest of one who is exempt, void or only voidable, and therefore, has the exempt person a right to make physical resistance? 3. Has the petitioner in this case, by simply pleading not guilty, waived the exemption privilege?

The first case bearing upon the first question coming to our attention is that of *Penny* v. *Walker,* 64 Me. 430 [18 Am. Rep. 269]. The facts involved in that case were in connection with the arrest of a mail carrier for violating the liquor laws of the state of Maine. The exemption of the mail carrier, as claimed under the statutes of the United States giving exemption to mail carriers while on duty, is substantially similar, and the same in principle, to the constitutional provision giving exemption to senators and members of Congress. It was there held that while a mail carrier, when in the discharge of his duty, cannot be detained upon any civil suit, he is legally liable to arrest on a charge of any criminal offense. The defendant in that case was apprehended for violating the liquor laws of the state, and attempted there, as here, to resist the arrest by assaulting the officer. For this assault he was arrested and found guilty. The judgment of the trial court was upheld on the theory that exemption did not extend to criminal cases, and the assault upon the officer therefore was unwarranted.

In 1 A. L. R. 1156, we find an extended note on the subject of immunity from arrest of public officers. The following is laid down as the rule in such cases, supported by a number of authorities, to wit: ''While in both England and America public officers are, as a rule, exempted from arrest in civil cases while engaged in the performance of the duties of their office, this exemption is not extended to cases of a criminal nature, except in the one instance of ambassadors or ministers of a foreign country. (*United States* v. *Kirby,* (1869)

7 Wall. (U. S.) 482 [19 L. Ed. 278]; *Williamson* v. *United States,* (1907) 207 U. S. 425 [52 L. Ed. 278, 28 Sup. Ct. Rep. 163]; *United States* v. *Hart,* (1817) Pet. C. C. 390 [Fed. Cas. No. 15,316]; *United States* v. *Wise,* (1842) 1 Hayw. & H. [82 Fed. Cas. No. 16,746a]; *Penny* v. *Walker,* (1874) 64 Me. 430 [18 Am. Rep. 269]; *Commonwealth ex rel. Bullard* v. *Keeper of Jail,* (1877) 4 W. N. C. (Pa.) 540; *Wellesley* v. *Beaufort,* (1831) 2 Russ. & M. 639 [39 Eng. Rep. 538].) And see the reported case *Gross* v. *State,* 186 Ind. 581 [1 A. L. R. 1151, 117 N. E. 562].

The origin of the rule exempting members of the assembly and that it extends only to civil cases, is clearly and distinctly set forth in the case of *Commonwealth ex rel. Bullard* v. *Keeper of Jail,* (1877) 4 W. N. C. (Pa.) 540: ''A member of the general assembly was arrested on a charge of embezzlement, and it was insisted that, by virtue of the constitutional provision exempting members of the general assembly from arrest, except in cases of 'treason, felony, violation of his oath of office, and breach or surety of the peace', he was immune, and entitled to be discharged. Holding that the immunity could be claimed only in civil cases, the court said: 'The constitutional privilege claimed by the relator is borrowed from the privileges claimed by and accorded to members of the British parliament. These privileges were recognized and enjoyed in Pennsylvania before any written constitution had been adopted. They were a part of our common law. The privileges, from very small beginnings, had, by accumulation, assumed alarming proportions. Parliament, being the judge of its own privileges, could not be confined within any certain limits, and for this reason the framers of the Federal Constitution inserted the clause defining what the privileges of members of congress should be, and beyond which they could not go. The object was not to create the privileges therein expressed, for they were already established by our common law, but rather to render them certain, and fix limits within which they should be confined. The several states followed the national Constitution, and inserted similar clauses in all their constitutions. As the object was to *limit* the privilege from arrest to that then enjoyed by members of the British Parliament, and as the same language is employed as had been adopted in England to express the offenses for which members of Parlia-

ment could be arrested, to-wit: 'Treason, felony, and *breaches of the peace'*, it follows that all offenses in England, comprehended in the words *breach of the peace,* are excepted from the privileges from arrest. Blackstone says there is no precedent for any such privilege, but only in civil suits. . . . It may be safely concluded that the privilege from arrest in America is, in no case, greater than the same privilege in England. We cannot, by a liberal construction of the language of our Constitution, enlarge the privileges of our legislators beyond those formerly enjoyed by members of the Parliament in England. (See Story, Const. 865.) The reason of the law is its life, and while there is a great reason for privileging public servants from civil detentions and arrests, there is none for shielding them from apprehension for crimes against the peace and dignity of the state.' " (See 1 A. L. R. 1157. To the same effect is the case of *United States* v. *Wise,* 1 Hayw. & H. [82 Fed. Cas. No. 16,746a].)

The principal case upon the question we are now. considering is that of *Williamson* v. *United States,* 207 U. S. 425 [52 L. Ed. 278, 28 Sup. Ct. Rep. 163, 167]. The opinion in this case takes up and traces the entire history of the exemption finding its expression in section 6 of article I of the United States Constitution, and it is there held that the exemption applies only to civil cases, and not to criminal charges. It is further held in that case, just as in the case which we have cited, decided by the Supreme Court of Pennsylvania, that the framers of the Constitution intended to incorporate into the constitutional exemption, the interpretation given to the words "treason, felony and breach of the peace", as had attached thereto by the common law. In this state, of course, battery is a breach of the peace, as appears by the definition found in section 701 of the Penal Code under the title, "security to keep the peace", to wit: "An information may be laid before any of the magistrates mentioned in section 808, that a person has threatened to commit an offense against the person or property of another." In other words, to threaten to assault another is a breach of the peace, and, therefore, the commission of. the actual assault is necessarily a breach of the peace, being the threatened act carried into execution.

In 9 C. J. 387, we find the following definition of "breach of the peace": "The offense may consist of acts of public turbulence or indecorum in violation of the peace and quiet of an invasion of the security and protection which the laws afford every citizen, or of acts such as tend to excite violent resentment, or to provoke, or to excite others to break the peace; actual or threatened violence is an essential element of the breach of the peace; either one is sufficient to constitute the offense."

The rule that there is no exemption from arrest in criminal cases is clearly stated in 5 C. J. 388, and that the construction given to the constitutional provision is governed by the common law as it existed at the date of the adoption of the Constitution, is there clearly stated as follows: "A congressman or member of a state legislature is not privileged from arrest for the commission of a criminal offense. The constitutional privilege of senators and representatives from arrest in all cases 'except treason, felony and breach of the peace' during their attendance at the session and in going to and returning from the same, confers merely a privilege from arrest in civil cases, as the terms of the exception from the privilege comprehend all criminal offenses. This was the construction of those words in England, as applied to parliamentary privilege, and American constitutions, using these same identical words, use them in the sense which they had been settled to mean in England."

It is not necessary for us to decide that a vioation of the ordinance referred to herein constitutes a breach of the peace as defined by our criminal codes, as the cases which we have cited show that the words of the Constitution are taken in their generic sense and include all crimes known to the common law. Misdemeanors are crimes known to the common law. We may state, however, that violations of the traffic ordinances would necessarily lead to disorder, and in large measure impair personal peace and security. It follows that the first question propounded herein must be answered in the negative.

We consider now the second question: Had the petitioner a right to resist the arresting officer to the extent of assaulting his person?

In *Reed et al.* v. *State,* 103 Ark. 391 [Ann. Cas. 1914B, 811, 147 S. W. 76, 78], we find a case where the circum-

stances are very similar to those set forth in the cause before us. The cause before the court in that case involved the question of the right to resist an arrest under the plea of exemption. The court said: "It is finally contended that the defendants had the right to resist the service of the attachment because the officer had no authority to arrest Price at the time he attempted to do so, and at the same time the resistance was offered, because Price was then and there a member of the militia, in attendance at muster. (See sec. 6323, Kirby's Digest.) We do not deem it necessary to decide this question. In a note to be found in Cooley's Constitutional Limitation, (7th ed.), page 192, it is said that it is not a trespass to arrest a person privileged from arrest, though the officer be aware of the fact. The arrest is only voidable, and the party may waive his privilege. The process of attachment in this case was valid on its face, and was issued by a court of competent jurisdiction; and if it be conceded that Price was privileged from arrest at the time, his exemption from arrest was a personal privilege, and as such could be waived by him. (3 Cyc. 924; *Woods* v. *Davis,* 34 N. H. 328; *Brower* v. *Tatro,* 115 Mich. 368 [73 N. W. 421]; *Smith* v. *Jones,* 76 Me. 138 [49 Am. Rep. 598]; *Leal* v. *Wigram,* 12 Johns. (N. Y.) 88; *Tarlton* v. *Fisher,* 2 Doug. (Eng.) 671; *State* v. *Polacheck,* 101 Wis. 427 [77 N. W. 708]; *Prentis* v. *Commonwealth,* 5 Rand. (Va.) 697 [16 Am. Dec. 782].) If Price was entitled to the immunity claimed, there are legal modes by which that privilege might be vindicated. It might have been done by the order of the court issuing the attachment, or by a judge on *habeas corpus.* The fact that Price may have been privileged from arrest did not authorize him to obstruct the process of the court."

In volume 1, Cooley's Constitutional Limitations, eighth edition, page 275, we find the following note on the subject of resisting an arrest on the ground of exemption: "On this subject, Cushing on Law and Practice of Parliamentary Assemblies, 546–597, will be consulted with profit. It is not a trespass to arrest a person privileged from arrest, even though the officer may be aware of the fact. The arrest is only voidable; and in general the party will waive the privilege unless he applies for discharge by motion or on *habeas corpus.* (*Tarlton* v. *Fisher,* Doug. 671; *Fletcher* v. *Baxter,* 2 Aik. 224; *Fox* v. *Wood,* 1 Rawle (Pa.), 143; *Willard* v.

*Sperry,* 1 Wend. (N. Y.) 32; *Wilmarth* v. *Burt,* 7 Met. (Mass.) 257; *Aldrich* v. *Aldrich,* 8 Met. (Mass.) 102; *Chase* v. *Fish,* 16 Me. 132.) But where the privilege is given on public grounds, or for the benefit of others, discharge may be obtained on the motion of any party concerned, or made by the court *sua sponte.''*

It is further held that an arrest of one who, at the time of the arrest, may claim immunity therefrom, is not a trespass, and no action for damages will lie by reason of such arrest. (*Smith* v. *Jones,* 76 Me. 138 [49 Am. Rep. 598].) The reason that no action will lie for damages, and that such an arrest is not a trespass, rests on the rule that exemption is a personal privilege to be claimed in a legal manner, and if not claimed, it is waived. The arrest not being void where the exemption exists, and only voidable, it follows that the person arrested has no legal right to offer physical violence to the arresting officer. ''Officers are bound to execute writs, although the persons against whom they are directed, are privileged from arrest, and an officer who acts in accordance with his precept, is not a trespasser, although the party arrested is privileged. (*Carle* v. *Delesdenier,* 13 Me. 363 [29 Am. Dec. 508]; *Tarlton* v. *Fisher,* Doug. 671; *Willard* v. *Sperry,* 1 Wend. (N. Y.) 32; *Secor* v. *Bell,* 18 Johns. (N. Y.) 52; *Chase* v. *Fish,* 16 Me. 132.)''

In answer to the third query, it appears to be very well settled, whether in civil or criminal cases, the exemption being a personal privilege, unless it is claimed by plea or motion, it is waived, and when one goes to trial upon the plea of not guilty of the offense charged, no question of exemption enters into the cause. Thus, in the early case of *Geyer's Lessee* v. *Erwin,* 4 Dallas, 107 [1 L. Ed. 762], the Supreme Court of Pennsylvania in 1790 lays down the rule which has been followed ever since, to wit: ''But every privileged person must at the proper time, and in a proper manner, claim the benefits of this privilege. The judges are not bound judicially to notice a right or privilege, nor to grant it without a claim. In the present instance neither the defendant nor his attorney suggested the privilege as an objection to the trial of the cause, and this amounts to a waiver by which the party is forever concluded.'' (The case involved the arrest of a member of the general assembly.)

To the same effect is the case of *Prentis* v. *Commonwealth*, 5 Rand. (Va.) 697 [16 Am. Dec. 782.] It is there held that the exemption from arrest must be taken advantage of in the proper way, and at the proper time. A number of cases are found in the note following the above case, holding that the exemption privilege must be interposed by plea or motion, and that going to trial without raising the issue waives exemption.

In *Kallock* v. *Elward*, 118 Me. 346 [8 A. L. R. 750, 108 Atl. 256, 257], we find the rule laid down as follows: ''So under the constitution of Maine, senators and representatives, except in certain cases, are privileged from arrest 'during their attendance at, going to, and returning from each session of the legislature.' . . . And yet it has been held that this privilege, though guaranteed by the organic law of the state, may be waived. . . . In the case at bar the exemption is created by statute, but there is no reason why the doctrines of waiver and estoppel should not apply and work their legitimate effects the same as if the exemption were created at common law or under the Constitution.''

Following the case to which we have just referred is a long list of citations on the subject of waiver, the general consensus of which is concluded in the following words, which we quote therefrom: ''All the authorities affirm that the privilege may be waived. Therefore, the arrest is not void; it is only voidable. The arrest remains valid until avoided. And the witness (person) can avoid the arrest only by applying to the court for a discharge.''

Holding, in substance, as we have stated, is the case of *In re Roszynialla*, 99 Wis. 534 [75 N. W. 167].

In *State* v. *Polacheck*, 101 Wis. 427 [77 N. W. 708], the arrest of a legislator, exempt therefrom at the time of arrest, is held to be voidable and not void. We quote therefrom as follows: ''The arrest of a legislator, while constitutionally exempt, is not void, since the exemption is a personal privilege only, entitling him to be discharged on plea.'' There appears some *dicta* in that case to the effect that had the defendant properly claimed his privilege when he was brought before the police court, he might have been discharged on motion or plea in abatement.

In 2 R. C. L., page 485, section 44, it is said: ''There seems to be some uncertainty as to the proper manner for a

person to avail himself of the privilege of exemption from arrest in civil cases. All the authorities appear to agree that it may be by motion to quash the writ, or to set aside the proceedings taken, while the exemption exists. The privilege is considered as a personal one existing primarily for the benefit of the court or the legislative body in which membership is claimed, and accordingly the privilege ordinarily is one of grace rather than of right, and one as to which there is room for discretion as to its allowance. Suing out a writ of *habeas corpus* is in many cases considered a proper mode of raising the question of lawfulness of an arrest of one claiming an exemption. Courts do not of their own motion notice the exemption from arrest granted to legislators; the privilege must be promptly and properly claimed, or it may be lost and considered as having been waived. Since the exemption from arrest is merely a privilege, it is usually held that in case of its breach the aggrieved party does not have any action for damages.''

That one relying upon an exemption privilege must appear and claim that privilege at the proper time, further appears in the case of *Northwestern Casualty & Surety Co.* v. *Conaway*, 210 Iowa, 126 [68 A. L. R. 1465, 230 N. W. 548].

In the instant case the petitioner, at the close of the trial, asked the court to instruct the jury in the language of section 11 of article IV of the Constitution. This request was in no sense the claiming of the privilege in the manner, form and at the time required by the cases which we have cited. The plea of not guilty raised but one issue: Whether the petitioner had or had not assaulted the officer, and the instruction requested was not germane to that issue.

The petitioner's official position as a member of the legislature, on the twentieth day of May, 1923, at the time of entering his plea, did not in anywise affect his duty to the public, so that the privilege did attach to the office. The legislature had already adjourned. When the warrant issued in this case was served upon the petitioner does not appear, but the date of the plea entered by the petitioner is set forth in the record. At that time, if any privilege existed (which we have held did not exist), it was the duty of the petitioner, either by motion or plea in abatement, to seek his discharge. (5 C. J. 470.)

In view of what we have said, and the authorities cited, the conclusion is inescapable that the exemption of legislators from arrest does not apply in criminal cases; that the petitioner had no legal right to assault the officer; and that any claim of exemption was waived in this case by reason of not tendering the question of privilege by proper plea at the proper time to the trial court.

The writ is denied and the petitioner remanded.

Thompson (R. L.), J., and Preston, P. J., concurred.