FILED 169
Honorable Ralph Uthlaut, Jr. State Senator, 23rd District Rural Route 1 New Florence, Missouri 63363
Dear Senator Uthlaut:
This opinion is in response to your question asking:
 "Can a member of the Missouri Legislature be arrested for speeding, drunken driving, and other misdemeanors, (1) during a session of the Missouri General Assembly, including the 15 day period prior to and after the session; and (2) at any other time when the legislature is not in session, even if the alleged occurred during a previous legislative session."
Section 19, Article III of the Missouri Constitution, provides:
 "Senators and representatives shall, in all cases except treason, felony, or breach of the peace, be privileged from arrest during the session of the general assembly, and for the fifteen days next before the commencement and after the termination of each session; and they shall not be questioned for any speech or debate in either house in any other place."
We note parenthetically that similar provisions are in the Missouri Constitution, Section 4, Article VIII, respecting voters, in Section 111.251, RSMo, respecting judges, clerks and voters, and in Section 491.220, RSMo, respecting witnesses. Compare Section 41.680, RSMo, respecting the militia, Section 544.230, RSMo, officers transporting prisoners, and Section 491.430, RSMo, witness uniform attendance law.
In our Opinion No. 19, dated April 8, 1953 to Representatives Corn and Bryant, this office concluded that members of the General Assembly are privileged from arrest except for cases of treason, felony or breach of the peace during the session of the General Assembly and for the 15 days before the commencement and after the termination of each session. In that opinion we gave the phrase "breach of the peace" a narrow meaning which excluded "speeding" and "running a stop light" offenses. In addition it is stated in 12 Am.Jur.2d Breach of the Peace, Etc. § 4, that there is authority for the view that not every misdemeanor is a breach of the peace, and that it is essential to show, as an element of the offense, a disturbance of public order and tranquility by acts or conduct not merely amounting to unlawfulness, but tending also to create public tumult and incite others to break the peace. However, we are presently of the view that the narrow definition of "breach of the peace" expressed in our 1953 opinion is no longer consistent with the weight of legal authority. Therefore, in view of the evolving legal authority cited below, the 1953 opinion is hereby withdrawn.
The text of 12 Am.Jur.2d § 4, cited above, recognizes the fact that in some cases the term "breach of the peace" is given a very comprehensive scope, so that it includes all violations of any law enacted to preserve peace and order, or all violations of public peace or order. As authority this reference source cites as follows:
 "6. Miles v. State, 30 Okla Crim 302, 236 P 57, 44 ALR 129; State v. Christie, 97 Vt. 461, 123 A 849, 34 ALR 577. See also Akron v. Mingo, 169 Ohio St. 511, 9 Ohio Ops 2d 7, 160 N.E.2d 225, 74 ALR2d 585, holding that `breach of the peace,' as employed in a statute excluding cases of a breach of the peace from the privilege from arrest otherwise granted to parties returning from court, embraces all criminal offenses, so that a defendant returning home after being discharged on a charge of driving while intoxicated was not immune from arrest for driving without a license and going through a red light."
A second source of general reference, Words and Phrases
Volume 42A, Treason, Felony, and Breach of the Peace, 34-35, states:
 "All criminal offenses are comprehended by the terms `treason, felony, and breach of the peace,' as used in U.S.C.A. Const. art. 1, § 6, cl. 1, excepting these cases from the operation of the privilege from arrest therein conferred upon Senators and Representatives during their attendance at the sessions of their respective houses, and in going to and returning from the same. Williamson v. U.S., 28 S.Ct. 163, 166, 207 U.S. 425, 52 L.Ed. 278.
 "Words `treason, felony or other crime' in U.S.C.A. Const. art. 4, § 2, subsec. 2, designating such offenses as extraditable offenses, include every offense made punishable by laws of state where committed from highest to lowest, including misdemeanors, statutory crimes, and acts made crimes by statute at any time after adoption of Federal Constitution and enactment of extradition law. State v. Taylor, 22 S.W.2d 222, 224, 160 Tenn. 44."
A third source of general authority can be found at Scurlock,Arrest in Missouri, 29 U. Kansas City Law Review, 117 (1961). At pages 131-133, Professor Scurlock states:
 ". . . The uncertainty lies in the meaning of the words `breach of the peace.' They can signify a disturbance of the public tranquility as in the misdemeanor of disturbing the peace but they may be taken also in a broader sense. The United States Supreme Court has given to the phrase in the Federal Constitution the significance of public offense so that the whole exemption must be read: except treason, felony and misdemeanor — thus confining the immunity to civil arrest. [Williamson v. United States, 207 U.S. 425 (1907)]. This accords with the English interpretation of the `Immunity of Parliament' from which the legislators' immunity is derived and gives to `breach of the peace' much the same meaning as the contra pacem domini regis of the common law indictment. Since an ordinance violation is also a public offense, although prosecution of the offense is in the nature of a civil proceeding, no immunity should exist in respect to such an arrest either. [See In re Emmett, 120 Calif. App. 349, 7 P.2d 1096 (1932) sustaining the arrest of a state legislator for crossing a street against the traffic in violation of an ordinance.] The Missouri Supreme Court has not interpreted the phrase `breach of the peace' in the Missouri Constitution and statutes, but it may be safely assumed that court will not deviate from the United States Supreme Court's construction. In Schwartz v. Dutro,
[298 S.W. 769 (Mo. 1927)] in considering the immunity from arrest of a suitor, which is not covered by the statute, the Missouri Supreme Court quoted from Ruling Case Law to the effect that the immunity of witnesses and parties exists only as to arrest on civil process. There is no reason to believe that `breach of the peace' does not have the same meaning in each of the contexts in which it is used."
In the Missouri case of Schwartz v. Dutro, 298 S.W. 769 (Mo. 1927), a case involving the privilege of witnesses under Section491.220, RSMo, which is cited by Professor Scurlock, the Missouri Supreme Court stated at l.c. 771:
 ". . . The cases of Person v. Grier, 66 N.Y. 124, 23 Am.Rep. 35, and In re Healey, 53 Vt. 695, 38 Am.Rep. 713, are also distinguishable from the case in hand by the fact that the privilege there allowed was freedom from service of civil process and not immunity from criminal arrest. This distinction is generally recognized, and is well stated in 2 R.C.L. 479, thus:
 "`Parties and witnesses attending in good faith any legal tribunal which has power to pass upon the rights of the persons attending its sessions are privileged from arrest on civil process during their attendance and for a reasonable time in going and returning; but the exemption exists only as to arrest on civil process, and the courts do not recognize any similar privilege from arrest on a criminal charge.'"
The case which has been most frequently cited for the holding that the terminology in question covers all crimes is Williamsonv. United States, 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278 (1908) in which the United States Supreme Court held that the words "treason, felony and breach of the peace" as used in Section 6 of ArticleI of the United States Constitution with respect to congressional immunity confined the privilege to arrest in civil cases. That case is cited with consistency by the courts dealing with various constitutional and statutory provisions.
Recently, in People v. Flinn, 362 N.E.2d 3 (1977) the Appellate Court of Illinois, Fifth District, upheld the conviction of a state legislator who was ticketed by a state highway patrolman for speeding while returning home from legislative business. The court found the legislator guilty of a breach of the peace within a similar constitutional provision exempting legislators from arrest. The court held that the limiting clause "treason, felony or breach of the peace" has its roots in English legal history where it was used to express an exception to the parliamentary privilege from arrest so as to exclude from the operation of that privilege all criminal arrests. Therefore, the court concluded that traffic violations fall within the phrase "breach of the peace" since such violations lead to disorder and endanger the lives and security of the people of the state.
In reaching this conclusion the Illinois Court, after quoting the Constitution of the United States which contains an analogous provision, stated:
 ". . . Cases interpreting the exception have held that the framers of the United States Constitution intended to exclude all crimes from the protection afforded by the privilege. (Williamson v. United States (1908), 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278; Long v. Ansell
(1934), 293 U.S. 76, 55 S.Ct. 21, 79 L.Ed. 208; see also United States v. Brewster (1972), 408 U.S. 501, 92 S.Ct. 2531, 33 L.Ed.2d 507.) Cases construing analogous language in state constitutions have also held that the exception effects an exclusion of all crimes from operation of the privilege. See Swope v. Commonwealth (Ky. 1964), 385 S.W.2d 57; Ex parte Emmett (1932), 120 Cal.App. 349, 7 P.2d 1096."
As noted above, the Illinois Court relied upon the holdings of the United States Supreme Court, the Court of Appeals of Kentucky and of the District Court of Appeals, Third District of California for the conclusion that the exception of "treason, felony, breach of the peace", the parliamentary privilege from arrest enjoyed under the Constitution by members of the General Assembly, excludes all crimes from the operation of the privilege.
In Ex parte Emmett, 7 P.2d 1096 (1932), the District Court of Appeals, Third District of California, considered the arrest of a legislator who resisted arrest for a traffic violation on the grounds that he was not subject to such arrest under the state constitution. Although the legislator resisted the arrest on the basis of his purported constitutional privilege, the charge that was brought against him was for battery. The case is noteworthy not only for its principal holding, which we have stated, but also because the court held that the violation of a city traffic ordinance was a public offense. This case thus formed the basis for the statement made by Professor Scurlock in his article quoted above, that an ordinance violation is also a public offense, and although prosecution of the offense is in the nature of a civil proceeding, no immunity should exist.
Likewise, in City of Akron v. Mingo, 160 N.E.2d 225 (1959), noted above, in which the appellant was convicted in municipal court on a charge of driving an automobile through a red light and for not having a driver's license, the Supreme Court of Ohio held that similar Ohio statutes granting privilege from arrest to parties, witnesses, attorneys and certain other officers of the court, while going to, attending, or returning from court, granted only privilege from civil arrest and not privilege from arrest for crimes or misdemeanors.
Also, in State v. Murray, 205 A.2d 29 (1964), the Supreme Court of New Hampshire held that where a national guardsman was stopped by a police officer and issued a summons to appear before municipal court to answer a speeding charge, there was no "arrest" within the New Hampshire statutes giving national guardsmen privilege from arrest and therefore the prosecution for speeding was not subject to dismissal. The statute in that instance provided that members of the national guard were, except for treason, felony and breach of the peace, privileged from arrest and imprisonment while under orders in the active service of the state from the date of the issuing of such orders to the time when such service ceases or while going to, remaining at, or returning from any place of which the guardsmen may be required to attend military duty. The court also found there was no arrest in view of the fact that the guardsman was not taken into custody but was merely issued a summons. The definition of arrest as set out in the New Hampshire statutes followed the usual meaning of the term, similar to the definition of arrest in Missouri, Section 544.180, RSMo, in that it constitutes the taking of a person into custody in order that he may be forthcoming to answer for a commission of a crime. As we indicated, however, the charge was based on a municipal ordinance violation and not a state misdemeanor violation, but was nevertheless found to be within the scope of the exception to the privilege. The court stated that it failed to see how the action taken by the officer and the fact that defendant was required to answer to a speeding charge at a later date would result in interference with his duties as a national guardsman.
In Edwards v. District of Columbia, 68 A.2d 286 (1949) the Municipal Court of Appeals for the District of Columbia held that the District of Columbia Code providing that no person on the Lord's Day shall serve or execute or cause to be served or executed a writ, process, warrant, order, judgment or decree, except in cases of treason, felony or breach of the peace, does not prohibit service of execution of writs and processes on Sunday in criminal cases. See also, Commonwealth v. Magaro, 103 A.2d 449
(1954) in which the Superior Court of Pennsylvania reached a similar conclusion.
It is our view that the clear preponderance of legal authority compels and requires us to conclude that a member of the Missouri Legislature is not privileged from criminal arrest under the provisions of Section 19 of Article III of the Missouri Constitution. The authority cited above compels this conclusion notwithstanding our deep concern that no legislator ever be impeded in his efforts to attend a legislative session. We conclude also, that although a prosecution for a violation of a city ordinance is not a criminal proceeding but a civil one in Missouri and in many other states, the weight of authority indicates that Missouri legislators are not privileged from arrest under Section 19, Article III for ordinance violations since ordinance violations are clearly offenses against the public.
CONCLUSION
It is the opinion of this office that Section 19 of ArticleIII of the Missouri Constitution, which excepts members of the Missouri General Assembly from arrest during a session of the Assembly, and 15 days prior to and after such session, does not apply to arrests which are criminal in nature and such legislators may be arrested during such sessions for criminal or ordinance violations.
The foregoing opinion, which I hereby approve, was prepared by my assistant, John C. Klaffenbach.
Very truly yours,
 JOHN ASHCROFT Attorney General