## City of Chicago, Defendant in Error, v. John Brod, Plaintiff in Error.

### Gen. No. 13,906.

CRIMINAL LAW—*when imposition of fine unjustifiable.* The imposition of a fine for the purpose of casting costs upon a defendant is indefensible, the evidence being against the judgment rendered.

Action in debt. Error to the Municipal Court of Chicago; the Hon. JOHN C. SCOVEL, Judge, presiding. Heard in this court at the October term, 1907. Reversed. Opinion filed June 11, 1908.

GEORGE F. MULLIGAN, for plaintiff in error.

No appearance by defendant in error.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

This writ of error is sued out to reverse the judgment of the Municipal Court inflicting a fine of ten dollars on John Brod and condemning him to pay the costs of his prosecution.

The trouble occurred when Lammers, a policeman, was making an arrest. . The man arrested, however, turned out to be half-witted and entirely innocent of any wrong doing and was consequently upon trial discharged. Lammers claims that when he made the foregoing arrest Brod asked him if he was a detective, and on his replying in the affirmative Brod retorted, "Well, you are a hell of a detective, you are! If you are such a hell of a detective, why don't you arrest me?" Thereupon Lammers placed Brod under arrest. This is all the testimony given to support the information filed by the officer against Brod, charging that Brod, in violation of section 1772 of the Revised Municipal Code of Chicago, interfered with him while he was, in the discharge of his duty as a policeman, making an arrest.

Brod denies that he used the language attributed to

him by the officer or that he spoke to him at all. He further testified that he was attracted to the scene of the arrest by hearing a pistol shot; that he mingled in the crowd and heard that the man who was apparently the centre of the trouble was the harmless man, who was discharged by the same judge who fined Brod. Brod, in an ordinary tone of voice, said to a man next to him, who he thinks was Ericson, the harness-maker, in reply to his inquiry as to what was the matter, ''Well, he doesn't need to shoot him,'' referring to the man under arrest. Brod swears that at the time of making this remark he had his back to the policeman, who turned upon him, grabbed him by the throat, saying, ''So you want to interfere with this, do you?'' After handling Brod in a rough and severe manner, the officer called a patrol wagon and took Brod in it to the station. This testimony of Brod's was corroborated in every material matter by the testimony of two reputable citizens, eye-witnesses of the whole affair. These witnesses were in no wise impeached or their veracity assailed. Brod had lived in the neighborhood of his arrest eighteen years; was a wholesale and retail druggist, whose reputation for good citizenship had never before been in dispute. He was well and favorably known to his neighbors and had never before been arrested.

At the conclusion of the hearing the presiding judge remarked on the motion of Brod's counsel, that he be discharged ''Well, I think the defendant was guilty of indiscreet conduct in making any remark, but I am not going to fine him. I think the whole thing was a mistake all around. The people there knew something which the officer did not know, it seems, about Detlof, but even a half-witted man could commit a murder as well as anybody else. However, I let Detlof go, and I am going to discharge the defendant with a caution against making any remarks when an officer is making an arrest.''

The greater preponderance of the proof demon-

strates, to the satisfaction of any reasonable person, that Brod was not guilty of the charge of interfering with an officer while making an arrest. The trial judge so clearly indicates by his language *supra*. The prosecuting officer unfortunately and without right we think, suggested that Brod pay the costs if discharged. The court then used this language in reply to that suggestion: "Well, what can I do? The officer tells one story and is flatly contradicted by three reputable witnesses who tell an entirely different story." After further importunities by the prosecuting officer in an attempt to have the court mulct Brod with the costs, the court said, "I'll tell you what we'll do. Let the defendant pay the costs in one case and we'll let it go that way. If you don't want to pay the costs I'll fine you one dollar and costs, and then you will have to pay them. What do you want to do?" Brod requested and obtained leave to consult with his counsel, and after doing so declined to pay any costs, whereupon the court said: "Ten dollars and costs. I'll stand by our policemen every time. They have got to be supported."

This has a strong flavor of the old justice of the peace court procedure of injustice and disregard of the legal rights of the citizen, which the institution of the Municipal Court was designed to remove. It is a strange doctrine that the court shall support the policemen every time, right or wrong. If this pronouncement of the trial judge is sustainable, where are our boasted liberties? Are they at the mercy of policemen, right or wrong? Must the citizen be beholden to the whim and humor of the police for his freedom, and can that freedom be taken away without the citizen offending against the law? The doctrine announced by the trial judge is too dangerous to be tolerated for one moment in the temple of justice.

We are not at all surprised that the city of Chicago fails to appear and defend against this unwarrantable judgment, which through its prosecuting officer it pro-

cured to be entered. It is indefensible and cannot be sustained.

The judgment of the Municipal Court is reversed and the plaintiff in error, Brod, is discharged.

*Reversed.*