REED v. STATE.

Opinion delivered May 6, 1912.

1. APPEAL AND ERROR—WAIVER OF ASSIGNMENTS OF ERROR.—Assign-
   ments of error in accused's motion for new trial will be deemed to have
   been waived when not urged in his brief on trial. (Page 394.)

2. CRIMINAL LAW—FORMER JEOPARDY—WAIVER OF DEFENSE.—Where
   accused went to trial without insisting upon their defense of former
   jeopardy, they will be deemed to have waived or abandoned such
   defense. (Page 395).

3. OBSTRUCTING JUSTICE—DE FACTO OFFICER.—One is not justified in
   resisting arrest by an officer *de facto*. (Page 395.)

4. SAME—INSTRUCTION.—An instruction that process may be obstructed
   by threats or intimidation without force is not erroneous. (Page
   396.)

5. INSTRUCTION—OBJECTION.—Objection that an instruction is involved
   and not couched in clear terms must be specific. (Page 397.)

6. OBSTRUCTING JUSTICE—EXEMPTION FROM PROCESS.—Persons who
   obstructed an officer in serving process can not rely upon the defense
   that the person sought to be arrested was exempt from process, as a
   member of the State militia, since his exemption from arrest was a
   personal privilege which could be waived by him. (Page 397.)

Appeal from White Circuit Court; *Hance N. Hutton,* Judge; affirmed.

### STATEMENT BY THE COURT.

Howard Reed, Jim Lattin and Captain Bradford were indicted under section 1960 of Kirby's Digest for obstructing process.

The evidence on behalf of the State is substantially as follows:

A subpoena was issued from the White Circuit Court for Fred Price, and Price, although duly served, refused to appear in obedience to it. A writ of attachment was then issued by the court, and placed in the hands of J. F. Williams, an acting deputy sheriff of White County, to be served on him. J. F. Williams testified in substance, as follows:

I was acting deputy sheriff in July, 1911, and had been for several months prior to that time. A writ of attachment was placed in my hands for Fred Price. I went to Beebe in White County to serve the attachment and secured the assistance of Ben Allen, the constable of the township. We went down to the military reservation where Price was, he being in encampment as one of the State guards. The militia were encamped there for the purpose of rifle practice. I read the summons to Price, and asked him if he were ready to go. He said that he was not, and Mr. Allen advised him to go. The defendant Lattin asked me what we were doing, and I told him. He then said: "Go back and tell that damned court there was nobody there that they needed down there." Mr. Allen went over to the defendants Reed and Bradford, and I walked over there. I asked Price if he was ready to go, and he said no, and one or two or three of them said that he would have to have a leave of absence. I then asked: "Am I going to get him?" and Lattin said it would take a piece of red tape about that long (indicating). I then said: "Price, we will have to go," and Mr. Reed and Mr. Lattin caught hold of my arm, and I will not say positively, but I think also Mr. Bradford caught hold of my arm, and they pulled him loose.

Ben Allen testified, in substance, as follows:

I went with J. F. Williams to assist in executing a writ of attachment for Fred Price. It was not executed because

Mr. Reed, Mr. Lattin and Captain Bradford took him away from us. This occurred on the military reservation in White County, near Beebe. We first looked up the captain of Price's company, and asked him if we could take Price, and he said that we had his permission. We then went down to where Bradford and Williams were, and Captain Bradford and Lattin and Reed were telling why we could not take Price away, because the military law was superior to the civil law. I asked them if they meant to resist us and to refuse to give Price up. Captain Bradford said that he would not say what he would do until the matter was presented to him in the proper way. Mr. Williams, the deputy sheriff, then asked how we should proceed to get him, and Lattin replied that it was a piece of red tape about so long, and Williams then grabbed Price, and said: "Come on and let's go." And we got him a little piece away when Lattin grabbed Price by the arm, and Price commenced to throw his arms backwards and forwards, and got loose from us, and went on off. Captain Bradford did not take hold of me, and only said: "You can not take him." Captain Reed said we could not take him, and might have said that if he was in Price's place he would go. Both Captain Reed and Captain Bradford said that we had no right under the law to take him.

The testimony on the part of the defendants tended to show that they did not resist Williams and Allen in their efforts to serve the attachment on Price. Other facts will be referred to in the opinion. There was a trial before a jury, which resulted in a verdict of guilty as to the defendants, Reed and Lattin, and from the judgment rendered they have duly prosecuted an appeal to this court.

*Troy Pace,* for appellant; *S. Brundidge,* and *W. F. Pace,* of counsel.

1. Appellants are entitled to a reversal on their plea of former jeopardy showing that at a former trial the jury were brought in without appellants' consent and before they had deliberated or taken a ballot were discharged by the court over the objections of appellants. 16 Ark. 568; 43 Ark. 273; 48 Ark. 36; Const. Ark. art. 2, § 8.

2. The record of the appointment of Williams as deputy sheriff shows on its face that he was not a duly and legally

qualified officer, in that there was no approval of his appointment as provided by statute. Kirby's Dig., § § 7751, 7752; 32 Ark. 547, 548; 49 Ark. 451, 452; 26 Ark. 282.

3. The court erred in its instruction charging the jury that proof of force was not necessary. Having alleged in the indictment that the resistance was by force, it was incumbent upon the State to prove the allegation as laid. 30 Ark. 135; 9 Ark. 193; 10 Ark. 259; 22 Ark. 252.

4. The cause should be reversed because Fred Price was exempt from arrest under the attachment, being at the time in attendance at a muster of the volunteer militia. Kirby's Dig., § 5323; Castle's Supp. Kirby's Dig. § 5301 rl; 5 Words and Phrases, 4645.

*Hal L. Norwood,* Attorney General, and *William H. Rector,* Assistant, for appellee.

1. The record does not disclose any action taken by the court on the plea of former jeopardy. The presumption is that there was no abuse of discretion.

2. Williams was a *de facto* officer, and his authority to act can not be questioned collaterally. 79 Ala. 39; 106 Ga. 116; 130 Ala. 92; 46 Tex. Crim. 417; 69 Pac. (Kan.) 171.

3. The court's instruction on the question of force is correct. Kirby's Dig., § 1960; 95 Ark. 65; 137 S. W. 561.

4. Privilege from arrest is personal, and inures only to the party sought to be arrested; and, if arrested, his proper remedy is to apply to the proper court for discharge. The officer making the arrest is not a trespasser, but, if armed with process fair upon its face and issued from a court having jurisdiction, is fully protected. 16 Me. 132; 13 Me. 363; 77 N. W. (Wis.) 708; 122 Mass. 429; 66 N. Y. 124; 76 Me. 138; 16 Am. Dec. 782; 2 Am. & Eng. Enc. of L. 902; 58 Ia. 697; 96 Am. St. Rep. (Tex.) 812; 84 *Id.* 669.

HART, J., (after stating the facts). Counsel for defendants in their brief only argue four grounds for reversal of the judgment. Other assignments of error are made in their motion for a new trial; but, inasmuch as they have not favored us with an argument on them in their brief, under our rules of practice, they will be deemed to have been waived or abandoned.

1.  It is first urged that the judgment should be reversed and dismissed upon the defendant's plea of former jeopardy.

The record shows that no ruling of the court was asked or obtained upon this plea.  The immunity from second jeopardy guaranteed by the Constitution is a personal privilege which the accused may waive, and such waiver may be implied. 17 Am. & Eng. Ency. (2 ed.) 605; 6 Am. & Eng. Ann. Cases, 132, and case note.

The defendants, having elected to go to trial without asking the court to pass upon their plea of former jeopardy, are deemed to have waived or abandoned it.  They could not take the chances of a favorable verdict, and, when defeated, revert to a matter which would have prevented a trial.  They must abide the result which they invited by going to trial without asking the court to pass upon their plea of former jeopardy.

2.  The record shows that the sheriff of White County had in writing appointed J. F. Williams a deputy sheriff, and pursuant to this appointment Williams had taken the oath of office, and was acting as deputy sheriff, pursuant to such appointment.  It is now contended by counsel for defendant that the appointment was void, because the approval of the county judge had not been indorsed upon his appointment and recorded as required by section 7752 of Kirby's Digest. We do not deem it necessary to express an opinion on this question, for Williams was a *de facto* officer, and his act could not be collaterally inquired into.

In 1 Wharton, Criminal Law, § 652, the doctrine is stated as follows:

"The officer's title is not at issue in such a proceeding (*i. e.*, a prosecution for resisting an officer in the service of process) when it appears that he is an officer *de facto*, that is, the recognized official representative of a government in actual power."

In 1 Bishop, New Criminal Law, 464, the author says: "It is probably the better doctrine, though the decisions as to it are not harmonious, that the criminal law will not justify a person in resisting an arrest by an officer *de facto* on the ground that he is not such *de jure*."  See also *State* v. *Quint* (Kan.), 69 Pac. 171.

3. It is next urged that the court erred in giving the following instruction to the jury:

"There seems to be some stress laid on the fact as to whether there was any force used by these officers in resisting or obstructing this process. Force is not necessary under this indictment. You might obstruct the process through any means that makes an obstruction or resistance of lawful authority. It may be done by threats, intimidation, or resisting it in any other way which obstructs the process would be obstruction of process."

The indictment in this case was found under section 1960 of Kirby's Digest, which reads as follows:

"If any person shall knowingly and wilfully obstruct or resist any sheriff, or other ministerial officer, in the service or execution of, or in the attempt to serve or execute, any writ, warrant or process, original or judicial, in discharge of any official duty, in case of felony, or any other case, civil or criminal, or in the service of any order or rule of court, in any case whatever, he shall be deemed guilty of a misdemeanor, and, on conviction, shall be fined in any sum not less than fifty dollars, and may also be imprisoned not exceeding six months."

Under the facts as developed by the State, there were threats shown upon the part of the defendants, coupled with the present ability and apparent intention to execute them, and this was sufficient, under the statute, to constitute the offense of obstructing the execution of the process in question. State v. Scott, 123 La. 1085 (17 Am. & Eng. Ann. Cases 400), and case note on page 402; State v. Welch, 37 Wis. 202.

In Pierce v. State, 17 Tex. App. 240, the Court of Appeals of Texas approved the following charge:

"As to what constitutes an opposition to the execution of a warrant or resistance of an officer, the jury are charged that any act wilfully done with intent to deter or prevent any officer from the performance of his duty, and prevent him in making the arrest, would come within the meaning of the statute. If the means used is sufficient to prevent the officer in making the arrest, through fear, terror or otherwise, caused by the opposition or resistance, it would make the offense complete if it had the other elements hereinafter charged upon." See also Woodworth v. State, 26 Ohio St. Rep. 196.

It must be admitted that the instruction in this case is somewhat involved, and is not couched in as clear terms as it should have been. However, this objection to the instruction is not fatal to it, and should have been met in the court below by specific objections on the part of the defendant.

4. It is finally contended that the defendants had the right to resist the service of the attachment because the officer had no authority to arrest Price at the time he attempted to do so, and at the time the resistance was offered, because Price was then and there a member of the militia, in attendance at muster. See section 6323, Kirby's Digest.

We do not deem it necessary to decide this question. In a note to be found in Cooley's Constitutional Limitation, (7 ed.) page 192, it is said that it is not a trespass to arrest a person privileged from arrest, though the officer be aware of the fact. The arrest is only voidable, and the party may waive his privilege.

The process of attachment in this case was valid on its face, and was issued by a court of competent jurisdiction; and if it be conceded that Price was privileged from arrest at the time, his exemption from arrest was a personal privilege, and as such could be waived by him. 3 Cyc. 924; *Woods* v. *Davis* 34 N. H. 328; *Brower* v. *Tatro,* 115 Mich. 368, 73 N. W. 421; *Smith* v. *Jones,* 76 Me. 138, 49 Am. Rep. 598; *Leal* v. *Wigram,* 12 Johns. (N. Y.) 88; *Tarlton* v. *Fisher,* 2 Douglas (Court K. B.) 671; *State* v. *Polacheck,* 77 N. W. (Wis.) 708; *Prentis* v. *Commonwealth,* 16 Am. Dec. 782, 5 Randolph (Va.) 697.

If Price was entitled to the immunity claimed, there are legal modes by which that privilege might be vindicated. It might have been done by the order of the court issuing the attachment, or by a judge on habeas corpus. The fact that Price may have been privileged from arrest did not authorize the defendants to obstruct the process of the court.

The judgment will be affirmed.