STATE OF NORTH CAROLINA v. PHILLIP LEIGH

No. 23

(Filed 10 March 1971)

1. Obstructing Justice; Arrest and Bail § 6— obstructing officer's investigation of crime — use of loud and abusive language — sufficiency of evidence

In a prosecution charging defendant with obstructing a police officer in the performance of his duties, evidence of the State tending to show that defendant, by the repeated use of loud and abusive language over a period of several minutes, prevented a deputy sheriff from talking with a suspect at the scene of a reported crime, *held* sufficient to be submitted to the jury. G. S. 14-223.

2. Obstructing Justice; Arrest and Bail § 6; Statutes §§ 5, 10— resisting or obstructing officer — charge of the crime in the disjunctive

The statute making it unlawful for any person to "resist, delay or obstruct" a public officer in the discharge of his duties applies to cases falling within any one of the descriptive words, since the words are joined by the disjunctive "or." G.S. 14-223.

3. Criminal Law § 132— motion to set aside verdict

Where there was sufficient evidence to support the verdict, trial court acted within its discretion in denying defendant's motion to set aside the verdict.

4. Obstructing Justice; Arrest and Bail § 6— resisting or obstructing officer — sufficiency of warrant

Warrant was sufficient to charge the statutory offense of obstructing an officer in the performance of his duties.

5. **Constitutional Law § 18; Obstructing Justice; Arrest and Bail § 6— freedom of speech — obstruction of police officer by use of loud and abusive language**

The First Amendment right of freedom of speech does not protect a defendant who, by the use of loud and abusive language, wilfully obstructed a police officer in the investigation of a reported crime. U. S. Constitution, Amendments I and XIV; G.S. 14-223.

6. **Constitutional Law § 18— freedom of speech — nature of the right**

Freedom of speech is not an unlimited, unqualified right, but it may be subordinated to other values and considerations and may be reasonably restrained as to time and place.

7. **Constitutional Law § 18— freedom of speech — legislative restrictions**

Within proper limits, the right of free speech is subject to legislative restriction when such restriction is in the public interest.

8. **Constitutional Law § 18— freedom of speech — illegal conduct by use of words**

When a course of conduct has been otherwise properly declared illegal, there is no abridgment of freedom of speech because the illegal conduct is initiated or carried out by the spoken or written word.

9. **Constitutional Law § 18— freedom of speech — extent of the right**

The protection of the First Amendment does not extend to every use and abuse of the spoken and written word.

10. **Obstructing Justice; Arrest and Bail § 6— right of citizen to advise another of constitutional rights**

A citizen may lawfully advise a person under police investigation of his constitutional rights as long as the advice is given in an orderly and peaceable manner.

APPEAL by defendant from *May, S.J.*, April 27, 1970 Criminal Session of WASHINGTON Superior Court.

Defendant was tried in the District Court upon a warrant which charged that on 20 January 1970 he "unlawfully, and willfully delayed and obstructed Deputy Sheriff Walter Peel, a duly empowered law enforcement officer of Washington County, in the discharge of his duty. Said officer was investigating a reported assault and attempting to prevent a breach of the peace on Main Street in Creswell. The hindrance, delay and obstruction of the officer was accomplished by abusive language directed at the officer and by Phillip Leigh trying to convince the person being investigated from cooperating with said officer. The offense charged was committed against the peace and dignity of the State and in violation of G.S. 14-223."

State v. Leigh

Defendant entered a plea of not guilty in the District Court. He was adjudged to be guilty and was sentenced to imprisonment for four months, the execution of the sentence of imprisonment being suspended upon condition that he pay a fine of $250. Defendant appealed to Superior Court. In Superior Court defendant was tried on the original warrant. Before pleading, defendant's attorney moved to quash the warrant. The trial judge denied the motion to quash and defendant thereupon entered a plea of not guilty.

The State offered evidence which tended to show that on the night of 20 January 1970, shortly before 11:30, Deputy Sheriff James W. Peel received at his home a complaint from Ivory Joe Simpson and Larry Spencer concerning an assault that took place on the main street of Creswell, North Carolina. Deputy Peel immediately went to the main street of Creswell for the purpose of investigating the complaint. It was his intention to talk with Raymond Blount as a part of the investigation. He found Blount sitting in defendant's car. The Deputy Sheriff testified:

"I was not able to talk to Blount because of Phillip Leigh. I couldn't get any information from Blount because of Leigh. I asked Blount to get out of the car and come on go with me and Leigh said 'You don't have to go with that Gestapo Pig.' There was a surrounding of people there and I could not navigate properly and I told Blount to come on and go with me. When he started toward my car, Leigh kept saying 'You don't have to go with that Pig.' . . . Phillip Leigh went to my car and told him to roll the window down and said that he did not have to go with that Pig and to give him five, and I pushed Raymond. Leigh was right up close to me. I pushed him back and told him to move out of the way. He kept coming up to the car when I was trying to put the man in the car.

. . . .

"I did not place him under arrest [at that time].

. . . .

" . . . Blount got out of Leigh's car and walked straight to my car. I opened the door. Blount did not get right in because of Leigh interfering and telling him not to go.

State v. Leigh

Leigh followed me over to my car. He was right behind me. He didn't prevent me from opening my door. He just kept interfering by teling Blount not to go with that Pig. . . ."

In addition to the testimony of Deputy Peel, the State offered the testimony of Ivory Joe Simpson and Larry Spencer. Their testimony tended to corroborate the testimony of Deputy Peel. Larry Spencer, among other things, testified:

"After Peel got to the scene, he went to Phillip Leigh's car to talk to Raymond Blount. Phillip Leigh was talking in a loud voice. Peel started talking to Raymond Blount. Leigh said pig to Peel. Leigh talked in a loud voice for 5, 7 or 8 minutes."

Defendant's evidence tended to show that he did not delay or obstruct Deputy Sheriff Peel in the performance of his official duties as a law enforcement officer; that he did advise Raymond Blount of his rights and that he told Raymond, "You ain't got to tell that Pig anything" only after the Deputy Sheriff had referred to him as a "nigger." Defendant's evidence further tended to show that he did not touch Deputy Sheriff Peel and that the officer never touched defendant.

The jury returned a verdict of guilty as charged. Defendant appealed from judgment sentencing him to imprisonment for a period of six months.

*Attorney General Morgan and Staff Attorney Ernest L. Evans for the State.*

*John H. Harmon for defendant.*

BRANCH, Justice.

[1] Defendant contends that the trial court committed prejudicial error in not allowing his motion for nonsuit and in denying his motion to set aside the verdict as being against the weight of the evidence.

G.S. 14-223 provides:

"If any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a

misdemeanor punishable by a fine not to exceed five hundred dollars ($500.00), imprisonment for not more than six months, or both."

Unquestionably, Deputy Sheriff Peel was discharging or attempting to discharge a duty of his office when he began an investigation of a crime reported to him by eyewitnesses, under circumstances which appeared to threaten a further breach of the peace.

We therefore consider whether the actions of defendant were such as to "resist, delay or obstruct Officer Peel while he was discharging or attempting to discharge the duties of his office."

In Webster's New International Dictionary the word "obstruct" is defined: "Hinder from passing, action, or operation; . . . to be or come in the way of"; and "delay" is defined, "to stop, detain, or hinder for a time; . . . to cause to be slower or to occur more slowly than normal." In Black's Law Dictionary "resist" is defined: "To oppose. This word properly describes an opposition by direct action and *quasi* forcible means." "Obstruct" is defined: "To hinder or prevent from progress, check, stop, also to retard the progress of, make accomplishment of difficult and slow."

In Wharton's Criminal Law and Procedure, Vol. 3, Obstructing Justice, Section 1284, pp. 633 and 634, it is stated:

"As a general rule, under statutes containing the words 'obstruct, resist, or oppose,' or 'resist, obstruct, or abuse,' or the single word 'resist' the offense of resisting an officer can be committed without the employment of actual violence or direct force, and without making threats. . . .

"To 'obstruct' is to interpose obstacles or impediments, to hinder, impede, or in any manner intrude or prevent, and this term does not necessarily imply the employment of direct force or the exercise of direct means."

In the case of *State v. Estes*, 185 N.C. 752, 117 S.E. 581, this Court construed former C.S. 7140, which in part provided that "any person or persons who willfully interfere with or obstruct the officers of the State Board of Health in the discharge of any of the aforementioned duties shall be guilty of a misdemeanor. . . . " In construing this statute the Court said:

"Section 7140 contains the words 'willfully interfere with or obstruct.' To procure a conviction under this section the State must show that the officer was obstructed or interfered with, and that such obstruction or interference was *willful* on the part of the defendant. We do not hold that actual violence or demonstration of force is indispensable to such obstruction or interference. To 'interfere' is to check or hamper the action of the officer, or to do something which hinders or prevents or tends to prevent the performance of his legal duty; and to 'obstruct' signifies direct or indirect opposition or resistace to the lawful discharge of his official duty."

For other cases upholding conviction for obstructing justice in the absence of violence or direct force, see: *United States v. Lukins,* 3 Wash. C. C. 335, Fed. Cas. 15,639; *United States v. McDonald,* 8 Biss. 439, Fed. Cas. 15667; *Drifoos v. Jonesboro,* 107 Ark. 99, 154 S.W. 196; *Reed v. State,* 103 Ark. 391, 147 S.W. 76; *State v. Scott,* 123 La. 1085, 49 So. 715; *Woodworth v. State,* 26 Ohio St. 196. See also Note "Obstructing Officer," 48 A.L.R. 746.

[2] As used in G.S. 14-223, the words "delay" and "obstruct" appear to be synonymous. Perhaps the word "resist" would infer more direct and forceful action. However, since the words describing the act are joined by the disjunctive (or), the statute will apply to cases falling within any one of the descriptive words. *Davis v. Granite Corporation,* 259 N.C. 672, 131 S.E. 2d 335; *Patrick v. Beatty,* 202 N.C. 454, 163 S.E. 572.

The language and conduct of defendant occurred in a setting in which a lone police officer, in response to a report that a crime had been committed, went to the main street of Creswell, North Carolina, at approximately 11:30 p.m., to investigate the alleged crime. He found about 25 people in the area, including "a bunch of boys from Columbia [who] kept me from talking to Blount also. They were interfering with me." Blount was sitting in defendant's automobile with defendant and at least one other person. There were two plainly visible shotguns lying in defendant's automobile. Upon this background the State, in instant case, offered evidence which tended to show that defendant's actions and his loud, raucous and abusive language delayed and obstructed for a period of several minutes the officer's attempt to continue his investigation by talking

to Raymond Blount. Further, the evidence tended to show that when Raymond Blount left defendant's automobile and entered the officer's automobile, defendant followed, and by his continuing acts and language forced the officer to leave the scene in order to talk to Blount.

Conceding that no actual violence or force was used by defendant, application of the descriptive words of the statute in their common and ordinary meaning, or as interpreted by the courts, to the facts of this case leads us to conclude that there was plenary evidence to support a jury finding that defendant did by his actions and language delay and obstruct the officer in the performance of his duties.

[3] Neither does this record show abuse of discretion in the trial court's denial of defendant's motion to set aside the verdict as being against the greater weight of the evidence, since there was sufficient evidence to support the verdict. *Robinette v. Wike,* 265 N.C. 551, 144 S.E. 2d 594; *State v. Reddick,* 222 N.C. 520, 23 S.E. 2d 909.

[4] We agree with the Court of Appeals that although the warrant upon which defendant was tried "is not a model one," we think it was sufficient to charge an offense under the statute.

[5] Defendant also contends that his constitutional rights were violated by indicting, prosecuting and convicting him of engaging in a constitutionally protected activity. He cites and relies heavily upon the case of *Street v. New York,* 394 U.S. 576, 22 L. Ed. 2d 572, 89 S.Ct. 1354. In that case the defendant burned an American flag on a New York Street corner, and among other statements, said: "We don't need no damn flag." The defendant was charged with and convicted under a new statute which made it a misdemeanor "publicly [to] mutilate, deface, defile . . . or cast contempt upon, either by words or act [any flag of the United States]." In reversing his conviction, the United States Supreme Court in a five to four decision held that the accused had a constitutional right publicly to express his opinion about the flag, even when it was contemptuous and defiant. The Court held that he could not be punished for his public utterances. The Court further held that since it could not be determined whether the accused's words were the sole basis for his conviction, or whether he was convicted for both

his words and his deeds, his conviction could not be permitted to stand.

Instant case differs from *Street v. New York, supra,* in that in Street defendant's speech constituted a violation of the statute merely because of the content of the words spoken. Here, the offense involved not the content of the words spoken but defendant's continued integrated course of conduct which prevented Deputy Peel from conducting his investigation.

[6, 7] Freedom of speech is not an unlimited, unqualified right. Speech may be subordinated to other values and considerations, and may be reasonably restrained as to time and place. *State v. Wiggins,* 272 N.C. 147, 158 S.E. 2d 37; *Dennis v. United States,* 341 U.S. 494, 95 L. Ed. 1137, 71 S.Ct. 857. It is well settled that, within proper limits, the right of free speech is subject to legislative restriction when such restriction is in the public interest. *Valentine v. Chrestensen,* 316 U.S. 52, 86 L. Ed. 1262, 62 S.Ct. 920.

[8, 9] When a course of conduct has been otherwise properly declared illegal, there is no abridgment of freedom of speech because the illegal conduct is initiated or carried out by the spoken or written word. The constitutional right of freedom of speech does not extend its immunity to conduct which violates a valid criminal statute. *Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490, 93 L. Ed. 834, 69 S.Ct. 684. Neither does the protection of the First Amendment extend to every use and abuse of the spoken and written word. *Stromberg v. California,* 283 U.S. 359, 75 L. Ed. 1117, 51 S.Ct. 532.

In the case of *Communist Party v. Control Board,* 367 U.S. 1, 6 L. Ed. 2d 625, 81 S.Ct. 1357, it is stated:

" . . . To state that individual liberties may be affected is to establish the condition for, not to arrive at the conclusion of, constitutional decision. Against the impediments which particular governmental regulation causes to entire freedom of individual action, there must be weighed the value to the public of the ends which the regulation may achieve. *Schenck v. United States,* 249 U.S. 47, 63 L. ed. 470, 39 S.Ct. 247; *Dennis v. United States,* 341 U.S. 494, 95 L. ed. 1137, 71 S.Ct. 857; *American Communications Asso. v. Douds,* 339 U.S. 382, 94 L. ed. 925, 70 S.Ct. 674."

---

State v. Leigh

---

[5]　The provisions of G.S. 14-223 provide for safeguards that are essential to the welfare of the public. The necessity for adequate protection of life and property of the individual has never before been so real and demanding as in this era, when disrespect for the law and those who enforce it has become rampant. The purpose of the statute is to enforce orderly conduct in the important mission of preserving the peace, carrying out the judgments and orders of the court, and upholding the dignity of the law. When the limited restrictions imposed by the statute are weighed against the constitutional guarantees, the value of the restrictions to public need demands that the restrictions in the statute be enforced.

We do not think that the First or Fourteenth Amendment to the United States Constitution precludes prosecution and conviction of defendant for violation of the provisions of a criminal statute enacted in the public interest.

[10]　A more serious question is presented by defendant's contention that the trial judge failed to explain and apply the law to the evidence. He contends that under the charge as given the jury could have easily convicted defendant of the mere exercise of free speech which is constitutionally protected.

The general rule is that merely remonstrating with an officer in behalf of another, or criticizing or questioning an officer while he is performing his duty, when done in an orderly manner, does not amount to obstructing or delaying an officer in the performance of his duties. 39 Am. Jur., Obstructing Justice, Sec. 10, p. 508; Anno.: Obstructing Officer, 48 A.L.R. at 753; *People v. Magnes,* 187 N.Y.S. 913; *City of Chicago v. Brod,* 141 Ill. App. 500. It logically follows that a citizen may advise another of his constitutional rights in an orderly and peaceable manner while the officer is performing his duty without necessarily obstructing or delaying the officer in the performance of his duty. *People v. Pilkington,* 199 Misc. 665, 103 N.Y.S. 2d 64.

In the charge in instant case the trial judge stated defendant's contentions as follows:

"He says and contends, members of the jury, that he was advising one Raymond Blount of his rights under the Constitution of the United States of America, to wit, the Fifth Amendment. However, he says and contends that the words that he used were not intended to in any way hinder,

delay, obstruct or otherwise resist the officer in his attempt to carry out his duties or to investigate the situation at Boone's shop or place of business, to determine whether or not any law had been violated there. And he says and contends that under all of the evidence in this case you should have a reasonable doubt of his guilt and that you should return as to him a verdict of not guilty."

Nowhere in the charge did the trial judge explain the law or apply the law to the evidence concerning defendant's contention. Of course, if all defendant did was to advise Blount of his constitutional rights in an orderly and peaceable manner, defendant would not be guilty of the offense charged. It was error for the trial judge to fail to so charge. Neither did the court in its charge apply the law to the facts which the State contends would support a verdict of guilty.

For error in the charge there must be a new trial.

We do not deem it necessary to consider defendant's other assignments of error since they may not recur at the next trial.

This case is remanded to the North Carolina Court of Appeals with direction that it remand it to Superior Court of Washington County for a new trial in accordance with the principles herein stated.

New trial.