An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-92

Filed 4 June 2025

Buncombe County, Nos. 21CRS090691-100, 21CRS090695-100

STATE OF NORTH CAROLINA

       v.

MATILDA RAE BLISS and MELISSA ANN COIT, Defendants.

Appeal by Defendants from judgment entered 16 June 2023 by Judge J. Thomas Davis in Buncombe County Superior Court. Heard in the Court of Appeals 11 September 2024.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Matthew Tulchin, for the State.*

*First Amendment Clinic at Duke University School of Law, by Sarah H. Ludington, C. Amanda Martin, and Kyle H. Compton; Law Offices of Ben Scales, by Ben C. Scales Jr.; and Alan Stuart Graf, for Defendants-Appellants.*

*Elizabeth Jasmund Soja, for Reports Committee for Freedom of the Press, amicus curiae.*

CARPENTER, Judge.

Matilda Rae Bliss ("Defendant-Bliss") and Melissa Ann Coit ("Defendant-Coit") (collectively, "Defendants") appeal from judgment entered after a jury found

them guilty of second-degree trespass. On appeal, Defendants argue the trial court erred by denying their motion to dismiss based on their as-applied First Amendment challenge and instructing the jury in response to the jury's questions regarding the applicability of the First Amendment and Defendants' press status. After careful review, we discern no error.

## I. Factual and Procedural Background

Defendants were journalists for *The Asheville Blade*, a newspaper. *The Asheville Blade* is known for criticizing the Asheville Police Department's methods of clearing homeless encampments and corresponding protests. On 19 December 2021, a multi-day protest began in Aston Park (the "Park"), a public park owned and operated by the City of Asheville, North Carolina. The Park is governed by the Asheville City Code of Ordinances (the "City Code"). Section 12-41 of the City Code (the "Park Curfew") provides that all parkgoers are required to leave the Park by 10:00 p.m. *See* Asheville, N.C., Code § 12-41 (2023) ("All public parks . . . shall be closed to the general public between the hours of 10:00 p.m. and 6:00 a.m."). The purpose of the protest was to demand that the city allow "sanctuary camping" in the Park for the local homeless population.

On the first day of the protest, in the evening hours, officers warned protestors that they would be subject to arrest if they remained in the Park after 10:00 p.m. Officers, however, did not take any action against the protestors on the first day of the protest. Defendant-Bliss was not present on the first day of the protest, but

Defendant-Coit was in attendance for approximately one hour.

On 20 December 2021, Defendant-Bliss visited the protests. She remained in the Park for approximately an hour or two and reported on her observations for *The Asheville Blade*. Defendant-Bliss returned to the Park on 21 and 22 December to continue observing and taking photographs. *The Asheville Blade* published her photographs on its social media platforms. Defendant-Coit also returned to the Park on several occasions.

On 25 December 2021, Defendants were at the Park. Defendant-Bliss arrived at approximately 4:00 p.m., and Defendant-Coit arrived later that evening. Defendant-Bliss left the Park for a brief period of time and returned sometime between 9:30 p.m. and 10:00 p.m. to continue recording video footage and taking photographs. Shortly after 10:00 p.m., officers began dismantling protestors' tents and artwork. Officers also instructed everyone in the Park, including Defendants, to vacate the Park. Officers told Defendants they could continue reporting from outside the Park. Defendants, however, did not leave the Park and around 10:30 p.m., following additional requests by officers to vacate the Park, officers arrested Defendants for second-degree trespass.

Defendants were first tried and convicted of second-degree trespass in district court. Following their convictions, Defendants appealed to superior court. On 30 May 2023, Defendants filed a motion to dismiss, arguing the Park Curfew was facially unconstitutional. On 6 June 2023, the trial court heard arguments on Defendants'

motion to dismiss. The trial court denied Defendants' motion, concluding the Park Curfew was not facially unconstitutional.

On 12 June 2023, Defendants' case proceeded to trial. At the close of the State's evidence, Defendants moved to dismiss the charges, arguing the Park Curfew was unconstitutional as-applied to them. The trial court denied the motion. At the close of all of the evidence, Defendants renewed their motion, which the trial court denied in a written order entered after trial. During the charge conference, Defendants requested that the trial court change the "without authorization" language in the second-degree trespass instruction to "without legal right." The State objected, but the trial court allowed the change. Then, Defendants requested a First Amendment affirmative defense instruction, which the trial court denied.

During deliberations, the jury submitted a note to the trial court stating the following, in pertinent part: "We would like clarification as to if there was an instruction on the applicability of the First Amendment" (the "First-Amendment Question") and "We would like clarification as to if we are allowed to consider the [D]efendants' status as members of the press as potential exemption from the applicable ordinance" (the "Press-Status Question"). Thereafter, outside the presence of the jury, the parties conferred regarding the jury's questions. The trial court informed the parties how it would re-instruct the jury and defense counsel did not object to the trial court's proposed instructions. Thereafter, the trial court instructed the jury as follows:

**Trial court:** The answer to [the First-Amendment Question] is, no, there was not such an instruction. The issue of whether or not the defendants' First Amendment constitutional rights, particularly the free speech, is a question of law that will be decided by the Court, not the jury.

. . .

**Trial court:** Now, as to the [Press-Status Question] . . . My instruction to you is, you are entitled to consider all the evidence in this case in determining the guilt or innocence of the defendants.

On 15 June 2023, the jury found Defendants guilty of second-degree trespass. The trial court sentenced Defendants to a $100 fine plus court costs. Defendants gave oral notice of appeal in open court.

## II. Jurisdiction

This Court has jurisdiction under N.C. Gen. Stat. § 7A-27(b)(1) (2023).

## III. Issues

The issues are whether the trial court erred by denying Defendants' as-applied constitutional challenge and responding to the jury's note seeking instruction on the applicability of the First Amendment and Defendants' press status.

## IV. Analysis

### A. First Amendment Challenge

First, Defendants assert the trial court erred by denying their motion to dismiss based on their as-applied constitutional challenge. **{Def's Br. p. 11-12}.** We disagree.

This Court reviews alleged violations of constitutional rights de novo. *State v.*

*Shackelford*, 264 N.C. App. 542, 551, 825 S.E.2d 689, 695 (2019). "Under the *de novo* standard, this Court 'considers the matter anew and freely substitutes its own judgment for that of the lower tribunal.'" *Id.* at 551, 825 S.E.2d at 695 (quoting *State v. Williams*, 362 N.C. 628, 632–33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted)). "When an issue concerning the First Amendment arises, an appellate court must make an independent examination of the whole record in order to make sure that the judgment does not constitute a forbidden intrusion on the field of free expression." *State v. Bowen*, 282 N.C. App. 631, 636, 871 S.E.2d 547, 552 (2022) (internal quotation marks and citations omitted).

Defendants argue their speech—specifically, newsgathering—was protected by the First Amendment. The State, on the other hand, argues the First Amendment was not implicated because the Park Curfew regulates conduct, not speech. As a threshold matter, we consider whether Defendants' newsgathering was protected speech under the First Amendment, because "if it is not, we need go no further." *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 437 U.S. 788, 797, 105 S. Ct. 3439, 3446, 87 L. Ed. 2d 567, 576 (1985).

The First Amendment to the United States Constitution, applicable to the States through the Fourteenth Amendment, provides, in pertinent part, that "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." U.S. Const. amend. I; *see* N.C. Const. art. I, § 14 ("Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained,

- 6 -

but every person shall be held responsible for their abuse."). "Our appellate courts have held that the free speech protections contained in the federal and North Carolina constitutions are 'parallel and has addressed them as if their protections were equivalent.'" *Shackelford*, 264 N.C. App. at 552, 825 S.E.2d at 696 (quoting *State v. Petersilie*, 334 N.C. 169, 184, 432 S.E.2d 832, 841 (1993) (citation omitted)).

The right to freedom of speech, however, is not unlimited, *see State v. Leigh*, 278 N.C. 243, 250, 179 S.E.2d 708, 712 (1971), as not all speech is protected, *see Hest Techs., Inc. v. State ex rel. Perdue*, 366 N.C. 289, 297, 794 S.E.2d 429, 435 (2012). Indeed, there are " 'certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem.' " *Id.* at 297, 794 S.E.2d at 435 (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S. Ct. 766, 769, 86 L. Ed. 1031 (1942)). For example, " 'obscenity, defamation, fraud, incitement, and speech integral to criminal conduct' " are categories of speech that receive no First Amendment protection. *Id.* at 297–98, 794 S.E.2d at 435 (quoting *U.S. v. Stevens*, 559 U.S. 460, 468, 130 S. Ct. 1577, 1584, 176 L. Ed. 2d 435 (2010) (citations omitted)).

Conduct, as opposed to written or spoken words, can also qualify as protected speech—that is, if the conduct is "inherently expressive." *See State v. Bishop*, 368 N.C. 869, 872, 787 S.E.2d 814, 817 (2016). But "non-expressive conduct does not raise free speech concerns." *Durham Cnty. Dept. of Social Servs. v. Wallace*, 295 N.C. App. 440, 452, 907 S.E.2d 1, 10 (2024). Stated differently, conduct that is "sufficiently

imbued with elements of communication," may receive First Amendment protection, but conduct that is not intended to convey any particularized message, viewpoint, or idea does not receive First Amendment protection. *See Texas v. Johnson*, 491 U.S. 397, 404, 109 S. Ct. 2533, 2539, 105 L. Ed. 2d 342, 352 (1989) (internal quotation marks and citation omitted).

If the conduct at issue is determined to be "inherently expressive," we next examine whether the law or regulation regulates conduct or speech. *See Hest Techs., Inc*, 366 N.C. at 297, 794 S.E.2d at 435. But a determination that the regulation restricts pure conduct does not "neatly end the inquiry" because the regulation may still "unduly burden speech rights . . . ." *Id.* at 297, 794 S.E.2d at 435; *see also State v. Barber*, 281 N.C. App. 99, 110, 868 S.E.2d 601, 608 (2021) (Inman J., concurring in part and concurring in the result in part) ("[A] law or regulation that principally concerns itself with conduct may also burden speech and be subject to First Amendment protections."). Where a conduct-based regulation incidentally burdens speech, "courts have traditionally applied the test from *United States v. O'Brien*." *Hest Techs., Inc*, 366 N.C. at 300, 749 S.E.2d at 437; *see U.S. v. O'Brien*, 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 673 (1968). Under the *O'Brien* balancing test, a conduct-based regulation that places at least an incidental burden on speech,

> is sufficiently justified if it is within the constitutional
> power of the Government; if it furthers an important or
> substantial government interest; if the governmental
> interest is unrelated to the suppression of free expression;
> and if the incidental restriction on alleged First

Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien*, 391 U.S. at 377, 88 S. Ct. at 1685, 20 L. Ed. 2d at 680.

In *State v. Barber*, however, we did not reach the *O'Brien* balancing test in our analysis of whether the conduct-based regulation violated the defendant's First Amendment rights. 281 N.C. App. at 107, 868 S.E.2d at 607. Instead, we concluded that "the First Amendment [was] not implicated in the conduct for which [the] [d]efendant was charged." *Id.* at 107, 868 S.E.2d at 607. In *Barber*, the defendant was leading a group of fifty protestors through the North Carolina General Assembly office complex when he was arrested for trespass. *Id.* at 100, 868 S.E.2d at 603. The defendant, who was engaging in "call and response" chants, violated certain building rules that stated visitors of the complex "may not disturb or act in a manner that will imminently disturb the General Assembly[.]" *Id.* at 101, 868 S.E.2d at 603 (alteration in original). Officers instructed defendant to stop leading the chants and leave the building. *Id.* at 101, 868 S.E.2d at 603. When the defendant did not leave, he was arrested for second-degree trespass. *Id.* at 101, 868 S.E.2d at 603.

The defendant appealed to this Court arguing, in part, that his second-degree trespass conviction violated his First Amendment right to freedom of speech. *Id.* at 107, 868 S.E.2d at 606. We disagreed, reasoning that because the building rules did not "speak to the nature or content of a visitor's speech" the defendant's speech was not protected. *Id.* at 107, 868 S.E.2d at 606. Although this conclusion was dispositive,

we went on to say that even if the defendant's speech was protected, "his rights were not violated" because the building rules were "reasonable 'time, place, manner' restrictions" under the public forum doctrine. *Id.* at 107, 868 S.E.2d at 606 (reasoning that "the interior of the General Assembly is not an unlimited public forum").

We recognize our precedent may permit one of two different approaches to analyze this issue. *See id.* at 107, 868 S.E.2d at 607; *O'Brien*, 391 U.S. at 377, 88 S. Ct. at 1685, 20 L. Ed. 2d at 680. Under either approach, however, Defendants' argument fails. The Park Curfew provides that "[a]ll public parks . . . shall be closed to the general public between the hours of 10:00 p.m. and 6:00 a.m." *See* Asheville, N.C., Code § 12-41. Thus, by its plain language, the Park Curfew regulates pure conduct, does not aim to restrict free expression, and does not place an incidental burden on free speech. *See Barber*, 281 N.C. App. at 107, 868 S.E.2d at 607; *O'Brien*, 391 U.S. at 377, 88 S. Ct. at 1685, 20 L. Ed. 2d at 680. As in *Barber*, the Park Curfew does not "speak to the nature or content of a visitor's speech." 281 N.C. at 107, 868 S.E.2d at 606. Instead, the Park Curfew simply excludes all individuals from the Park between the hours of 10:00 p.m. and 6:00 a.m. Because the Park Curfew strictly regulates conduct, not speech, Defendants' First Amendment rights were not implicated in this case. *See id.* at 107, 868 S.E.2d at 607.

Even assuming Defendants' speech was protected, the Park Curfew was both sufficiently justified under the *O'Brien* balancing test, *see* 391 U.S. at 377, 88 S. Ct. at 1685, 20 L. Ed. 2d at 680, and was a reasonable time, place, manner restriction

under the public forum doctrine, *see Durham Cnty. Dep't of Soc. Servs.*, 295 N.C. App. at 451, 907 S.E.2d at 10. Accordingly, the trial court did not err by denying Defendants' motion to dismiss their as-applied challenge to the Park Curfew.

## B. Jury Instructions

Next, Defendants assert the trial court erred when it re-instructed the jury in response to the jury's First-Amendment and Press-Status Questions. Specifically, Defendants argue the trial court's instruction prejudiced the verdict because it caused the jury to incorrectly believe that the First Amendment and Defendants' status as members of the press could not be considered during deliberations.

As an initial matter, we consider whether this issue is properly preserved for our review. The trial court is permitted, after instructing the jury initially, to provide additional instructions responding to jury questions. *See* N.C. Gen. Stat. § 15A-1234(a)(1) (2023). To preserve a challenge to jury instructions, a party is required to object, "stating distinctly that to which objection is made and the grounds of the objection; provided that opportunity was given to the party to make the objection out of the hearing of the jury, and on request of any party, out of the presence of the jury." N.C. R. App. P. 10(a)(2). However, "[w]hen a trial court agrees to give a requested pattern instruction, an erroneous deviation from that instruction is preserved for appellate review without further request or objection." *State v. Lee*, 370 N.C. 671, 676, 811 S.E.2d 563, 567 (2018).

In the instant case, after retiring to deliberate, the jury submitted two

questions to the trial court: the First-Amendment Question and the Press-Status

Question.  The trial court conferred with the parties regarding the jury's questions

and informed the parties how it would instruct the jury in response.  Specifically, the

trial court stated the following with respect to the First-Amendment Question:

> **Trial court:** I will leave this open on that one, but it would
> be my intent, subject to hearing from both of you, to
> instruct the jury that no, there was not an instruction on
> the applicability of the First Amendment in this case, and
> whether or not there was a violation thereof would be an
> issue of law that the [c]ourt, the judge, will decide, not the
> jury. Now that's where I'm at there, but I'll come back to it.

Defendants did not object to the trial court's proposed instruction.  Then, with respect

to the Press-Status Question, the trial court stated the following:

> **Trial court:** I don't think I could tell them that they can
> create a potential exemption, but I think they can
> determine the guilt or innocence of the defendants. It's
> totally within their province as opposed to telling them - -
> well, I am not even going to tell them whether they need to
> address a potential exemption, but they can address all the
> evidence - - consider all the evidence in this case for
> purposes of determining guilt or innocence of the
> defendants.

Again, defense counsel did not object.  Thereafter, the trial court instructed the jury

as follows:

> **Trial court:** The answer to [the First-Amendment
> Question] is, no, there was not such an instruction. The
> issue of whether or not the defendants' First Amendment
> constitutional rights, particularly the free speech, is a
> question of law that will be decided by the Court, not the
> jury.
>     . . .

> **Trial court:** Now, as to the [Press-Status Question] . . . My instruction to you is, you are entitled to consider all the evidence in this case in determining the guilt or innocence of the defendants.

Defendants acknowledge they did not object when the trial court conferred with the parties about how to respond to the jury's questions. Instead, they assert the trial court, when re-instructing the jury, "substantially deviated from what it had told defense counsel it intended to say, thus depriving counsel of the opportunity to object with specificity." The trial court's instructions, however, were nearly identical to the instructional language the trial court proposed when the parties conferred. Thus, the trial court's instructions were not a substantial deviation from what was previously agreed upon and Defendants were not denied the opportunity to object with specificity. *See Lee,* 370 N.C. at 676, 811 S.E.2d at 567. On the contrary, Defendants had ample time and opportunity to object but failed to do so. Accordingly, this issue is not preserved for our review. *See* N.C. R. App. P. 10(a)(2).

## V. Conclusion

The trial court properly denied Defendants' motion to dismiss. Defendants' remaining argument is not properly preserved for our review. Accordingly, we discern no error.

NO ERROR.

Judges FLOOD and STADING concur.

Report per Rule 30(e).