STATE OF NORTH CAROLINA v. EDGAR CURTIS RUOF

No. 15

(Filed 16 March 1979)

1. **Criminal Law § 33— defendant's association with motorcycle gang—motion to exclude all evidence properly denied**

   In a prosecution for first degree murder, the trial court properly denied defendant's motion in limine seeking a ruling that all evidence relating to defendant's association with a motorcycle club known as "The Outlaws" be excluded, since the trial judge was not in a position prior to trial to know the context in which the matter defendant sought to exclude would be presented, and defendant retained his right to object to such testimony when it was offered at trial.

2. **Homicide § 20.1— photograph of deceased—admissibility to illustrate pathologist's testimony**

   In a prosecution for first degree murder, the trial court did not err in admitting a photograph of deceased into evidence, since the photograph as used by an expert in pathology related to the angle of entry and exit of the fatal bullet which bore on the plausibility of defendant's defense of accident.

3. **Homicide § 20.1— photograph of defendant—admissibility to explain identification testimony**

   In a prosecution for first degree murder, the trial court did not err in admitting into evidence a photograph of defendant as he appeared at the time of the crime, since defendant was heavy and had a long beard and long hair at the time of the crime but was slender, clean-shaven and had short hair at the time of the trial, and witnesses, by using the photograph to illustrate their testimony, were able to remove any confusion as to defendant's identity which might have arisen because of the variance in the witnesses' verbal descriptions of defendant on the night of the shooting as compared to defendant's appearance at trial.

### 4. Criminal Law § 33.1— defendant as member of motorcycle gang—evidence of identity and motive

In a prosecution for first degree murder, the trial court did not err in allowing testimony relating to defendant's association with a motorcycle gang since testimony that defendant was dressed in clothes of the motorcycle gang and was in the company of other motorcycle gang members was relevant and admissible for the purpose of identifying defendant; moreover, defendant's association with the gang was evidence of his motive for shooting deceased, who had encroached upon the territory of the gang, and the State could properly show motive even though motive did not constitute an element of the offense charged.

### 5. Constitutional Law § 30; Homicide § 20— knife found during trial—evidence made available to defendant

In a prosecution for first degree murder, the trial court did not err in admitting into evidence a knife found among deceased's personal effects which the State had not produced before trial pursuant to defendant's request for discovery, since the State discovered the knife during trial and advised defense counsel of its existence the next day; defense counsel did not object to introduction of the knife or request a continuance; even so, the trial judge without request took a recess to the end that defense counsel could make such use of the knife as he saw fit; and the introduction of the knife into evidence appeared to bolster rather than weaken defendant's position.

### 6. Criminal Law §§ 86.2, 102.5— defendant's prior criminal activity—cross-examination—no question asked in bad faith

Defendant's contention that the district attorney cross-examined him in bad faith with regard to prior criminal activity or acts of misconduct was without merit where the district attorney indicated that he did not intend to ask any questions in bad faith, and the court was not required to conduct a voir dire to determine whether the district attorney's questions were based on fact and asked in good faith.

### 7. Criminal Law § 102.9— district attorney's jury argument—characterizations proper

The district attorney's characterizations of defendant as an "outlaw," a "violent man," a man who carried an automatic pistol, rode with a motorcycle gang, and had a "violent temper" were supported by the evidence that defendant was a member of a motorcycle gang called "The Outlaws," that he wore a gun and had been convicted of carrying a concealed weapon and possessing a sawed-off shotgun, and that he shot an unarmed man at contact range with little or no provocation; moreover, defense counsel did not object to any of the argument directed to the character of defendant.

### 8. Homicide § 14— presumptions of unlawfulness and malice—constitutionality

The presumptions of unlawfulness and malice arising from the intentional use of a deadly weapon are not unconstitutional.

**9. Homicide § 21.5— premeditation and deliberation—sufficiency of evidence**

     Evidence in a first degree murder prosecution was sufficient for the jury to find premeditation and deliberation where such evidence tended to show that deceased was in an establishment dancing with his girlfriend, twirling a knife, and declaring himself to be "the baddest man in the bar"; defendant, a member of a motorcycle gang called "The Outlaws" became enraged, went to a room behind the bar where he obtained his pistol, and returned to the dance area where he observed a friend and deceased, who was unarmed, in a struggle; defendant shot deceased in the back of the head without any warning or any attempt to separate the two men; and defendant then left the scene without offering any assistance of any kind to the wounded man.

APPEAL by defendant from *Thornburg, J.*, 19 June 1978 Schedule "B" Session of MECKLENBURG Superior Court.

Defendant was charged with the crime of murder in the first degree. Prior to trial, his counsel filed a "motion in limine" seeking a ruling that all evidence relating to defendant's association with a motorcycle club known as "The Outlaws" be excluded. Judge Thornburg reserved ruling until the "approximate time during the course of trial."

In summary, the State's evidence was as follows:

Mike Cearley, a student at UNCC, testified that on 25 October 1975 at about 10:30 p.m., he went into an establishment in Mecklenburg County known as "The Hut." After about 45 minutes, he went to the bathroom, and as he returned to the main area of the establishment, he saw three men fighting in the center of the dance floor. As he moved through the crowd toward the fighting men, he observed that there were only two men engaged in the fight. He then saw defendant, whom he described as being about five feet seven inches tall, weighing approximately 215 pounds, wearing a full beard and having long reddish brown hair walk up to the two men and shoot one of them in the back of the head. He was later told that the man who was wounded was Roger Bartee. He noted that at trial defendant was much thinner than he was on the night of the shooting.

Douglas Rhyne, who was also at "The Hut" on the night of 25 October 1975 and the early morning hours of 26 October 1975, stated that he had seen defendant on prior occasions but had never been "introduced" to him. He had noticed defendant because he wore clothes which identified him as belonging to a

motorcycle group known as "The Outlaws." The witness stated that he had known Roger Bartee for over three years. He was standing outside "The Hut" when he heard a "scuffle" and upon entering he saw Roger Bartee and a man he had also previously noticed because he too wore "Outlaw colors." The two were locked together near the juke box. He then saw defendant grab Bartee by the shoulder and shoot him in the back of the head with a .45 caliber automatic pistol. The pistol was about four or five inches from Bartee's head when it was fired. Defendant then left the scene. The witness was shown a photograph of defendant, and he stated that it correctly portrayed defendant's appearance as of October, 1975. He testified that defendant's appearance at trial differed in that at the time of the shooting defendant had long hair, a full beard and was much heavier. The photograph was admitted into evidence over defendant's objection as State's Exhibit 5.

Steve Garcia, the manager and bartender of "The Hut" at the time of the shooting, stated that the establishment was frequented by a motorcycle club known as "The Outlaws." These men would bring pistols to the establishment and store them in an area behind the bar. Donald "Gangrene" Sears and Edgar Curtis "Moe" Ruof were members of "The Outlaws" club. On the night of the shooting, Roger Bartee and his girlfriend were dancing. The witness observed Bartee twirling a two inch knife, and he told Bartee to put the knife away. At this point, "Gangrene" who had been sitting at the bar approached Bartee and a fistfight started between the two. He then saw defendant go behind the bar, return and join in the fight. He saw a handgun in defendant's hand and thereafter heard a shot. After observing Bartee lying on the floor, he called the police. He did not see a weapon in Bartee's hand during the fight.

Debra Jean Payne testified that she accompanied her fiance Roger Bartee to "The Hut" on the night of 25 October 1975. Sometime after midnight, they were standing near the bar talking with friends about an incident which had occurred the night before when a man came up and asked Roger what they were talking about. When Roger answered, the man struck at Roger who then removed and handed her his glasses. The men started a fistfight, and she saw another man, who came from the area of the bar, shoot Roger in the head at close range. She was unable

to make an in-court identification of defendant as the man who did the shooting but identified State's Exhibit 5 as correctly portraying the man who shot Roger.

Scott Moody testified that during the early morning hours of 26 October 1975, he was standing outside "The Hut," and upon hearing a "rumpus," he looked inside. He observed two men wrestling, and he then saw the defendant walk up to the men and shoot Bartee in the head. He knew both Bartee and defendant by sight.

The State offered evidence to the effect that defendant was arrested in Florida where he was living under an assumed name. There was also medical testimony that Bartee died as a result of a gunshot wound to the head fired by a weapon at almost contact range. The State's other evidence was corroborative in nature.

Defendant testified that he was at "The Hut" on the evening of 25 October 1975. He was sitting at the bar with Donald "Gangrene" Sears and some girlfriends when he noticed Roger Bartee standing in the dance floor with an opened knife in his hand. Bartee looked at him and said that he "was the baddest one in the bar." The witness said that he immediately went into the back room behind the bar where he picked up his .45 caliber Colt automatic pistol and stuck it in his belt. When he reentered the main area, he saw Bartee strike Sears in the chest in a manner which drove Sears across the room. Defendant stated that he thought Bartee was stabbing Sears, and he, thereupon, pulled his gun and hit Bartee on the head. The gun accidentally discharged, and he fled because he was frightened. He thought that his pistol was on safety or "half-cocked."

Defendant also offered evidence tending to show that Bartee had the reputation of being a violent fighting man.

In rebuttal, the State offered Eric Johnson, a qualified firearms examiner, who testified that the weapon that defendant used on the morning of 26 October 1975 did not fire in a "half-cocked" position unless the trigger was pulled.

The jury returned a verdict of guilty of murder in the first degree, and defendant appealed from judgment imposing a sentence of life imprisonment.

*Rufus L. Edmisten, Attorney General, by Ben G. Irons II, Assistant Attorney General, for the State.*

*Michael S. Scofield for defendant appellant.*

BRANCH, Justice.

[1] Defendant assigns as error the failure of the trial judge to grant his motion in limine. The thrust of the motion was to prohibit any comment regarding defendant's association with "The Outlaws" motorcycle club. The trial judge considered the written motion and stated that he would rule on it "at the appropriate time during the course of the trial."

Generally, a motion in limine seeks to secure in advance of trial the exclusion of prejudicial matter. North Carolina has no statutory provisions for such a motion, and it is rarely if ever used in this State. In those jurisdictions which recognize the motion, however, the uniform rule appears to be that the decision whether to grant the motion is addressed to the trial judge's discretion. *See*, Annot., 63 A.L.R. 3d 311 (1975).

In instant case, we discern no prejudice resulting from the trial judge's failure to grant defendant's motion in limine. The trial judge was not in a position prior to trial to know the context in which the matter defendant sought to exclude would be presented. Defendant retained his right to object to such testimony when it was offered at trial. We, therefore, hold that the trial judge properly denied defendant's motion.

[2] Defendant argues that the trial judge committed prejudicial error by admitting a photograph of deceased into evidence. We do not agree.

During the testimony of Dr. Wood, an expert in pathology, he was shown a photograph which he stated fairly and accurately portrayed the head of Roger Dale Bartee. The witness then used this photograph to illustrate the entry and exit of the bullet which caused Bartee's death. When the photograph was offered into evidence, defense counsel objected but did not request a limiting instruction as to the use of the photograph. Judge Thornburg overruled defendant's objection and admitted the photograph into evidence.

It is well settled that photographs are admissible into evidence to illustrate the testimony of a witness. *State v. Crowder*, 285 N.C. 42, 203 S.E. 2d 38 (1974), *death sentence vacated*, 428 U.S. 903; *State v. Cutshall*, 278 N.C. 334, 180 S.E. 2d 745 (1971). Such photograph must, of course, be properly authenticated as a correct portrayal of the conditions observed and related by the witness who uses it to illustrate his testimony. *State v. Thomas*, 294 N.C. 105, 240 S.E. 2d 426 (1978). It is the rule in this jurisdiction that photographs are not substantive evidence and may be used only to illustrate or explain the testimony of a witness, and a party is entitled to an instruction to this effect *if he makes a timely request therefor.* 1 Stansbury's North Carolina Evidence (Brandis Rev.), *Witnesses*, Section 34, pages 99-100, and cases there cited.

Defendant relies upon *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1969), to support his argument. *Mercer* is distinguishable from instant case. The rationale of *Mercer* was that the trial judge erred because he admitted an excessive number of gruesome photographs which added nothing of probative value. Here, defendant contended that his pistol accidentally discharged when he struck Bartee on the head. Thus, the *single* photograph as used by Dr. Wood related to the angle of entry and exit of the fatal bullet which bore on the plausibility of defendant's defense of accident. Obviously, this evidence was relevant and of strong probative value.

[3] Neither do we find merit in defendant's contention that the trial judge committed prejudicial error in admitting into evidence a photograph of defendant as he appeared in October, 1975.

When defendant entered his plea of not guilty, he placed upon the State the burden of proving beyond a reasonable doubt each and every element of the crime of murder in the first degree and that defendant was the person who perpetuated the crime. *State v. Jones*, 280 N.C. 60, 184 S.E. 2d 862 (1971). Thus, it was incumbent upon the State to prove that it was Edgar Curtis Ruof who committed the crime. The State was not required to speculate as to what evidence or admissions defendant might later place before the jury. The photograph of defendant admitted as the State's Exhibit 5 was authenticated as portraying defendant's appearance on the date of the shooting and was used by the

witnesses to explain their testimony relating to identification. The eyewitnesses who observed defendant at the time of the shooting described him as a very heavy man who wore a full beard and had very long reddish brown hair. At trial, defendant was slender, clean-shaven, and had short hair. By using the photograph to illustrate their testimony, the witnesses were able to remove any confusion as to defendant's identity which might have arisen because of the variance in the witnesses' verbal descriptions of defendant on the night of the shooting as compared to defendant's appearance at trial.

[4] Defendant contends that the trial judge erred in allowing testimony relating to defendant's association with "The Outlaws" motorcycle gang because such evidence was irrelevant and was introduced solely to prejudice the jury. We do not agree. Relevant evidence will not be excluded simply because it may tend to prejudice the jury or excite its sympathy. *State v. Hairston*, 280 N.C. 220, 185 S.E. 2d 633 (1972), *cert. denied*, 409 U.S. 888. The witnesses who identified defendant testified that they had seen him at "The Hut" prior to the night in question dressed in "Outlaw" clothes and in the company of other "Outlaws." This testimony was relevant and admissible for the purpose of identifying defendant.

Moreover, the State contends that defendant's association with "The Outlaws" is evidence of his motive for shooting Bartee. The State argues in this regard that "The Hut" was the "home turf" of "The Outlaws" and defendant shot Bartee because he dared to encroach upon their territory. Our cases hold that it is competent to show motive for the commission of a crime though motive does not constitute an element of the offense charged. *State v. Adams*, 245 N.C. 344, 95 S.E. 2d 902 (1957); *State v. Coffey*, 228 N.C. 119, 44 S.E. 2d 886 (1947). In light of the relevance of the challenged testimony, its admission did not constitute error.

[5] Defendant assigns as error the ruling of the trial judge admitting into evidence a knife found among Bartee's personal effects.

Prior to trial, defense counsel made a request for discovery pursuant to G.S. 15A-910 which provides:

> *Regulation of discovery—failure to comply.*—If at any time during the course of the proceedings the court deter-

State v. Ruof

mines that a party has failed to comply with this Article or with an order issued pursuant to this Article, the court in addition to exercising its contempt powers may

(1) Order the party to permit the discovery or inspection, or

(2) Grant a continuance or recess, or

(3) Prohibit the party from introducing evidence not disclosed, or

(4) Enter other appropriate orders.

It is defendant's position that the failure of the State to produce the knife before trial resulted in prejudicial error.

The trial judge found that the State discovered the knife during the trial on the afternoon of 19 June 1978 and advised defense counsel of its existence at 11:00 a.m. on the following day.

In *State v. Shaw*, 293 N.C. 616, 239 S.E. 2d 439 (1977), the defendant was charged with rape and taking indecent liberties with a child. Over defendant's objection, the State offered evidence of a foreign pubic hair found about the private parts of the victim which an expert witness concluded could have come from the body of the defendant. The State did not become aware of this evidence until the trial was in progress, and as soon as the evidence came to the attention of the district attorney, he informed defense counsel of its existence. In finding no error, this Court, speaking through Justice Lake, stated:

By its express terms, this statute authorizes, but does not require, the trial court to prohibit the party offering non-disclosed evidence from introducing it. This is left to the discretion of the trial court and, under the circumstances disclosed by this record, we perceive no indication of abuse of such discretion. The defendant did not, as he might have done, request a continuance in order to permit him to prepare for cross-examination of these witnesses with reference to this matter.

In the case *sub judice*, defense counsel did not object to the introduction of the knife. He did not request a continuance. Even so, the trial judge without request took a recess to the end that

defense counsel could make such use of the knife as he saw fit. Under these circumstances, we see no error in the trial judge's ruling. Even had there been error in the court's ruling, we fail to discern any prejudice to defendant in the introduction of the knife. It was his position that he struck the deceased because he thought the deceased was knifing his friend. The introduction of the knife into evidence appears to bolster rather than weaken defendant's position.

This assignment of error is overruled.

[6] Defendant next contends that the trial judge erred in allowing improper and prejudicial cross-examination of defendant. More specifically, defendant argues that the district attorney cross-examined defendant in bad faith with regard to prior criminal activity or acts of misconduct. Prior to cross-examination, the jury was excused after a brief bench conference and the district attorney indicated that he did not intend to ask any questions in bad faith concerning prior criminal activity or acts of misconduct which to his knowledge were terminated in defendant's favor. Defense counsel requested that the district attorney be allowed to ask defendant, in the presence of the jury, only about prior criminal acts or acts of misconduct to which defendant admitted. The trial judge denied this request on the grounds that the district attorney presumably had some basis in fact for the questions he proposed to ask since he indicated that he would not ask any question in bad faith. Our case law supports the correctness of the trial judge's ruling. A defendant who elects to testify in his own behalf is subject to impeachment by questions relating not only to his conviction of crime but also to any criminal or degrading acts which tend to discredit his character and challenge his credibility. *State v. Foster,* 293 N.C. 674, 239 S.E. 2d 449 (1977). Such questions, however, must be asked in good faith. *State v. Foster, supra.* Where the record does not indicate that such questions were not asked in good faith, an assignment of error alleging that the district attorney acted in bad faith will not be sustained. *State v. Foster, supra; State v. Gaiten,* 277 N.C. 236, 176 S.E. 2d 178 (1970). In instant case, the record does not indicate that cross-examination of defendant was undertaken in bad faith. Moreover, in North Carolina, a trial judge is not required, as defendant requested, to conduct a voir dire to deter-

mine whether the district attorney's questions were based on fact and asked in good faith. *State v. Gaiten, supra.*

Defendant also complains of the district attorney's cross-examination regarding defendant's association with "The Outlaws" motorcycle gang. As we have noted, when a defendant takes the stand, he is subject to impeachment by questions relating to any criminal or degrading act which tends to discredit his character and challenge his credibility. *State v. Foster, supra.* Whether cross-examination transcends propriety or is unfair is a matter resting largely in the sole discretion of the trial judge, and his ruling thereon will not be disturbed absent a showing of gross abuse of discretion. *State v. Foster, supra; State v. Daye,* 281 N.C. 592, 189 S.E. 2d 481 (1972); *State v. Gaiten, supra.* We have held that the trial judge properly permitted State's witnesses to testify that one of the reasons they noticed and could identify defendant was because he wore "Outlaw" clothes. Certainly, it was proper for the State to buttress its identification testimony by showing that defendant was, in fact, a member of "The Outlaws." Thus, the trial judge did not abuse his discretion by permitting the district attorney to pursue this fair and relevant line of cross-examination.

[7] We turn to defendant's contention that the district attorney's argument to the jury was improper and prejudicial. The portions of the argument which defendant contends are improper and prejudicial are:

I don't want you to decide this case based on the fact that the defendant is an Outlaw.

* * *

Self defense is not a concept of law, thank goodness, that gives anybody with a hair triggered temper, a chip on his shoulder, any gun toting menace on the street, the right to shoot somebody because they think in their own mind, and their violent world, that it's a threat.

* * *

The circumstances must not be such that it causes this man, that is, I would submit to you, this violent man.

* * *

Walks around, carrying a [sic] automatic pistol, strapped to his side, rides with a motorcycle gang, whose very name shows the regard with which they hold the laws and their fellow man.

\* \* \*

He's going to do this just long enough for two skilled lawyers that he, or someone, has hired to get him out of this jam that his violent temper has got him in.

In 4 Strong's North Carolina Index 3d, *Criminal Law*, Section 102.9, page 533, we find this pertinent statement:

Wide latitude must be afforded counsel in the argument, and what constitutes abuse of this privilege must ordinarily be left to the sound discretion of the trial judge. And when the prosecuting attorney does not go outside of the record and his characterizations of defendant are supported by evidence, the defendant is not entitled to a new trial by reason of being characterized in uncomplimentary terms in the argument. . . .

*Accord: State v. Westbrook*, 279 N.C. 18, 181 S.E. 2d 572 (1971), *death sentence vacated*, 408 U.S. 939; *State v. Christopher*, 258 N.C. 249, 128 S.E. 2d 667 (1962).

In *State v. Westbrook, supra,* this Court stated:

. . . His [the prosecuting attorney's] characterization of them as "two robbers, two thieves, two gunmen, who practiced their trade with a sawed-off shotgun," cannot be deemed to have prejudiced the defendant unfairly in the eyes of the jury in view of his own testimony that he and Frazier had, a few days prior to the killing of Miss Underwood, held up and robbed a place of business in Concord, using a sawed-off shotgun, had on that occasion and on the one in question stolen one or more automobiles, that he "knew how to steal a long time ago" and was "not only a thief but \* \* \* also a robber." The defendant being charged on this trial with murder in the first degree, it was not improper for the prosecuting attorney to characterize him and his companion as "killers." . . .

This Court considered a similar question in *State v. Frazier*, 280 N.C. 181, 185 S.E. 2d 652 (1972), *death sentence vacated*, 409 U.S. 1004, and disposed of defendant's contention that the prosecuting attorney's argument was improper with this language:

> ... The reference in the argument to the defendant as a thief and a robber is supported by the defendant's own statement admitted in evidence. We find no statement in the argument of counsel for the private prosecution, set forth in full in the record, which is not supported by the evidence. Consequently, the argument did not go beyond permissible limits.

Here defendant admitted that he belonged to and had been an officer in "The Outlaws." He testified that he and other members of this group wore guns and that he had previously been convicted of carrying a concealed weapon and possessing a sawed-off shotgun. The State's evidence showed that he shot an unarmed man at contact range with little or no provocation. Thus, in our opinion, the district attorney's characterizations of defendant were supported by the evidence.

We note that defense counsel did not object to any of the argument directed to the character of defendant.

Ordinarily, impropriety in the argument should be brought to the attention of the trial judge before the case is submitted to the jury. *State v. Peele*, 274 N.C. 106, 161 S.E. 2d 568 (1968), *cert. denied*, 393 U.S. 1042. However, where there is gross abuse in the argument the court should act *ex mero motu*.

The single objection to the district attorney's argument was directed to the above last quoted portion of the argument. Judge Thornburg immediately sustained the objection, ordered it stricken and instructed the jury not to consider that remark at any point in their deliberations. The judge's prompt action cured any prejudice that might have followed from this part of the argument. *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976); *State v. Correll*, 229 N.C. 640, 50 S.E. 2d 717 (1948), *cert. denied*, 336 U.S. 969.

We hold that the district attorney's argument did not prejudicially depart from or distort the record so as to mislead the jury or deprive defendant of a fair trial.

[8]  Defendant contends that the trial judge erred in charging the jury on first and second degree murder that they could, but were not compelled to, infer unlawfulness and malice from an intentional killing with a deadly weapon. It is defendant's position that in light of the decision in *Mullaney v. Wilbur*, 421 U.S. 684, 44 L.Ed. 2d 508, 95 S.Ct. 1881 (1975), the presumptions of unlawfulness and malice arising from the intentional use of a deadly weapon are unconstitutional. This position is untenable. Recent decisions of this Court rendered subsequent to *Mullaney* have expressly held that such presumptions or inferences are constitutionally permissible. *State v. Hammonds*, 290 N.C. 1, 224 S.E. 2d 595 (1976); *State v. Williams*, 288 N.C. 680, 220 S.E. 2d 558 (1975). Moreover, in the case of *State v. Harris*, 297 N.C. 24, 252 S.E. 2d 781, we found an instruction on second degree murder virtually identical to the charge objected to in the case *sub judice* to be adequate.

[9]  Finally, defendant assigns as error the denial of his motions for judgment as of nonsuit as to the charge of first degree murder and the denial of his motion to set aside the verdict as to murder in the first degree.

Murder in the first degree is the unlawful killing of a human being with malice and with premeditation and deliberation. Premeditation means thought beforehand for some length of time, however short. Deliberation means an intention to kill executed by one in a cool state of blood, in furtherance of a fixed design to gratify a feeling of revenge or to accomplish some unlawful purpose and not under the influence of a violent passion suddenly aroused by some lawful or just cause or legal provocation. *State v. Biggs*, 292 N.C. 328, 233 S.E. 2d 512 (1977); *State v. Smith*, 290 N.C. 148, 226 S.E. 2d 10 (1976), *cert. denied*, 429 U.S. 932; *State v. Benson*, 183 N.C. 795, 111 S.E. 869 (1922). "Cool state of blood" as used in connection with premeditation and deliberation does not mean absence of passion and emotion but means that an unlawful killing is deliberate and premeditated if executed with a fixed design to kill notwithstanding defendant was angry or in an emotional state at the time. 6 Strong's North Carolina Index 3d, *Homicide*, Section 4.3, page 534; *State v. Faust*, 254 N.C. 101, 118 S.E. 2d 769 (1961), *cert. denied*, 368 U.S. 851.

We note that defendant does not argue that the State has failed to offer evidence sufficient to go to the jury on the question

of an unlawful killing with malice. It is his position that there was not sufficient evidence of premeditation and deliberation to carry the case to the jury.

Ordinarily, premeditation and deliberation are not susceptible of direct proof and usually must be established by proof of circumstances from which premeditation and deliberation may be inferred. *State v. Smith, supra; State v. Foust, supra.* Some of the circumstances to be considered in determining whether a killing is done with premeditation and deliberation are:

> . . . (1) Want of provocation on the part of the deceased [citation omitted]; (2) the conduct of defendant before and after the killing [citation omitted]; (3) the dealing of lethal blows after deceased has been felled and rendered helpless [citation omitted]; (4) the vicious and brutal manner of the killing [citation omitted]; (5) the number of shots fired [citation omitted]. . . .

*State v. Smith, supra; State v. Davis,* 289 N.C. 500, 223 S.E. 2d 296 (1976), *death sentence vacated,* 429 U.S. 809.

The evidence in this case would support reasonable, permissible inferences: (1) that deceased was in "The Hut" dancing with his girlfriend and while twirling a two inch pocket knife said, "I'm the baddest man in the bar."; (2) that defendant, a member of a motorcycle group called "The Outlaws" became enraged and went to a room behind the bar where he obtained his .45 caliber pistol and returned to the dance area where he observed his friend "Gangrene" and Bartee struggling with their arms in a locked position; Bartee was unarmed; (3) that defendant walked up behind Bartee and without any attempt to separate the men or give Bartee any warning of any kind at contact range fired a .45 caliber bullet into the back of Bartee's head; (4) that defendant then left the scene without offering any assistance of any kind to the wounded man.

Applying the above-stated principles of law and considering this evidence in the light most favorable to the State and giving the State the benefit of every reasonable inference therefrom, as we must, we hold that the evidence was sufficient to permit, but not require, the jury to find that defendant after premeditation and deliberation formed a fixed purpose to kill Roger Dale Bartee

and thereafter accomplished that purpose. Therefore, the trial judge properly submitted the charge of first degree murder to the jury.

Since there was sufficient evidence to support the verdict, the trial judge acted within his discretion in denying defendant's motion to set aside the verdict. No abuse of discretion is made to appear. *State v. Leigh*, 278 N.C. 243, 179 S.E. 2d 708 (1971).

Defendant has received a fair trial free of prejudicial error.

No error.