STATE OF NORTH CAROLINA v. JHALMAR EMMANUEL MEDINA

No. COA05-216

(Filed 6 December 2005)

## 1. Evidence— out-of-court statement—door opened on cross-examination—no error

Defense counsel opened the door during cross-examination to an out-of-court statement by defendant's cousin (Jorge), and the statement was correctly admitted during redirect examination.

## 2. Constitutional Law— effective assistance of counsel—tactical decisions—no error

Defendant's Sixth Amendment guarantee of the effective assistance of counsel was not violated by his counsel's decisions about testimony and an objection. Defense counsel apparently made a tactical decision; even so, any error was not so serious that his attorney was not functioning as counsel guaranteed by the amendment.

**3. Constitutional Law— right of confrontation—detective's testimony about witness—evidence otherwise admitted— no error**

The trial court did not violate the Sixth Amendment right to confrontation in a first-degree murder prosecution by admitting a detective's testimony that he considered defendant's cousin Jorge (who did not testify) a material witness against defendant based on an interview with Jorge. The jury had already heard that Jorge had been with defendant before and immediately after the murder and had implicated defendant as the murderer. The State was not trying to do indirectly what it could not do directly.

**4. Evidence— gang membership and colors—identification— admissible**

The trial court did not err in a prosecution for first-degree murder by admitting evidence that defendant was a gang member. Defendant's identity was in issue and the gang color and defendant's gang involvement helped the witness in identifying defendant.

**5. Appeal and Error— preservation of issues—failure to assign error—references to defendant having been in jail**

Failure to assign error to a ruling by the trial court meant failure to preserve for appeal issues concerning references to defendant having been in jail.

**6. Appeal and Error; Constitutional Law— preservation of issues—failure to assign error—life sentence for minor— death sentence ruling distinguished**

Defendant did not assign error and did not preserve for appeal the question of whether a life sentence without parole for a 16-year old violated the Eighth and Fourteenth Amendments. The U.S. Supreme Court ruling forbidding the death penalty for those under 18, *Roper v. Simmons*, 161 L. Ed. 2d 1 (2005), did not consider life imprisonment.

Appeal by defendant from judgments entered 1 September 2004 by Judge Nathaniel J. Poovey in Mecklenburg County Superior Court. Heard in the Court of Appeals 2 November 2005.

*Attorney General Roy Cooper, by Solicitor General Christopher G. Browning, Jr., for the State.*

*Kathryn L. VandenBerg, for defendant-appellant.*

**STATE v. MEDINA**

[174 N.C. App. 723 (2005)]

TYSON, Judge.

Jhalmar Emmanuel Medina ("defendant") appeals from judgments entered after a jury found him to be guilty of first-degree murder and attempted first-degree murder. We find no error.

## I. Background

The State's evidence tended to show that fifteen-year-old Omega Daniel Graham Morris ("Morris") was walking his girlfriend, fourteen-year-old Emily Stitt ("Stitt"), toward home late in the evening on 10 March 2003 when Morris was shot eight times and killed. Stitt was shot in the face and in the back but survived her injuries.

## A. Stitt

Stitt testified that during their walk toward home, two people crept out of the woods and approached them. One of the individuals drew a handgun out of his pocket and asked Morris, "Where is my Mother F—king speakers?" Stitt recognized the voice to be defendant's, one of Morris's friends. Stitt began walking and ran when she heard gunshots. Stitt testified that defendant came up beside her, shot her in the face, and she fell to the ground. Defendant pressed the hot tip of the gun onto her neck, burning her. Defendant realized that he had emptied the gun of bullets, reloaded, and shot Stitt in the back. When Stitt's father came out of his house, defendant ran away.

As Stitt waited for an ambulance at the scene of the attack, she identified defendant to police officers as the attacker. Later that evening, Stitt told detectives that defendant wore a bandanna tied around his face, blue or black in color, covering the lower part of his face up past his nose. She told detectives that defendant: (1) had very short hair; (2) wore a hood over his head; and (3) wore high-top Chuck Taylor Converse shoes and black clothes.

Stitt informed detectives that she had known defendant for at least one month and a half. She identified defendant from a police lineup of six people. Stitt told detectives defendant lived in Holly Hills, was El Salvadorian, was a member of the Crips gang, and carried a black revolver with a brown handle.

Utilizing Stitt's information, the police located defendant at his home. While searching defendant's house, the police found a gray hooded sweatshirt in a bedroom being used by Jorge Sotero-Sosa ("Jorge"), defendant's cousin. Jorge was present when the police

searched the house. Wrapped inside the sweatshirt was a pair of black sweat pants, a black toboggan, a blue bandanna, a pair of white gloves, and Converse Chuck-Taylor high-top shoes. The shoes contained fresh mud on the soles. Rashard Little ("Little") and Carly Ann Strand ("Strand"), defendant's friends, recounted seeing Jorge and defendant together on the night of the murder.

### B. Rashard Little

Little testified that he saw defendant on three occasions on 10 March 2003. Defendant told Little that morning he planned to kill Morris. Little saw defendant later in the afternoon when defendant retrieved his Converse Chuck Taylor high tops. Little saw defendant a third time around 11:30 p.m. Little testified that defendant and Jorge arrived at Little's house and asked if Little wanted to go with them to kill Morris. Before Little could get dressed, Jorge and defendant had left. Little said he heard gunshots and two people running through the woods about ten minutes later.

### C. Carly Ann Strand

Defendant's girlfriend, Strand, was with defendant and Jorge until 9:00 p.m. on the night of the murder. Defendant called Strand that night and told her that he and Jorge were going to work out before going to bed. The following morning defendant called Strand from jail and told her he had killed Morris the night before and hid the pistol in the woods. At defendant's request, Strand agreed to recover and dispose of the gun. Strand testified she and her friend, Brandi, retrieved the gun, threw it into a pond in a local neighborhood and threw the bullets into another nearby pond. After Strand's disposal of the pistol, defendant learned that Derek Oaks, Strands's friend, threatened to inform the police of Strand's disposal of the gun. On defendant's instructions, Strand took another friend, Waylen, to the pond so Waylen could remove the pistol from the pond. Although Strand stated she did not see Waylen remove the pistol from the pond, law enforcement officers later searched the pond but did not find a gun.

### D. Tijuan Kenkins

Tijuan Kenkins ("Kenkins") testified that he knew Morris and defendant. He had a conversation with defendant about a week and a half before Morris was murdered. In that conversation defendant told Kenkins he wanted to kill Morris because some of defendant's belongings being kept at Morris's house were missing. Kenkins also testified

that defendant had threatened to kill him the following day if he told Morris and his family about defendant's plan to kill Morris. Kenkins recalled that defendant carried a black .38 revolver with a brown handle. Kenkins testified, without objection, that defendant was a member of the Crips gang and that he wore a blue bandanna.

### E. Felicia Ann Garland

Felicia Ann Garland ("Garland"), defendant's girlfriend, testified that she had a conversation with defendant on Thursday afternoon during the first week of the trial. Defendant told her that a mutual friend would pick her up at her high school at 6:30 a.m. the next morning. Garland testified that she had agreed to go with defendant, who had skipped court during lunch and was on the run. Defendant told Garland that he had killed Morris and had attempted to kill Stitt. Defendant stated Morris had worn his clothes and stole his speakers. Defendant told Garland he sent Strand to retrieve the murder weapon and explained Strand had disposed of it in the pond behind her old neighborhood. Garland testified that defendant stated he had told Strand to tell the truth because he was leaving and never coming back. While the trial was ongoing, defendant attempted to flee but was apprehended.

Defendant was convicted of one count of first-degree murder and one count of attempted first-degree murder. He was sentenced to life imprisonment without parole on the conviction for first-degree murder. Defendant was sentenced to a minimum of 189 months and a maximum of 236 months for the attempted murder conviction. The sentences were ordered to run consecutively. Defendant appeals.

### II. Issues

Defendant argues the trial court erred when it: (1) admitted Jorge's alleged statements; (2) admitted evidence that he was a gang member and was previously in jail; and (3) sentenced him, a sixteen-year-old, to life imprisonment without parole.

### III. Standard of Review

"A trial court may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision." *State v. Sims*, 161 N.C. App. 183, 190, 588 S.E.2d 55, 60 (2003) (quoting *State v. Hayes*, 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985)).

**STATE v. MEDINA**

[174 N.C. App. 723 (2005)]

## IV. Out of Court Statements

Defendant argues: (1) the admission of Jorge's alleged statements violated defendant's right to confront witnesses against him; (2) defense counsel provided ineffective assistance in eliciting testimony about Jorge's alleged statements to Little; and (3) the trial court erred in allowing Charlotte Police Detective Harold Henson ("Detective Henson") to testify that he considered Jorge to be a "material witness" against defendant.

### A. Jorge's Statements

**[1]** While cross-examining Little, defense counsel asked whether part of Little's testimony was based on information Jorge had told him. Defense counsel asked Little to recount Jorge's out of court statement as follows:

Q. What did Jorge tell you?

A. He told me what happened.

On re-direct, the State used the same phrase in repeating the question to Little. Without objection, Little testified on redirect as follows:

Q. The defense lawyer asked you some question that you answered by telling him that you were told by Jorge what had happened to [Morris] and [Stitt]; is that correct?

A. Yes.

Q. What did Jorge tell you had happened to [Morris] and [Stitt]?

A. He told me that [defendant] killed them.

Our Supreme Court has stated, "[t]he purpose of redirect examination is to clarify any questions raised on cross-examination concerning the subject matter of direct examination and to confront any new matters which arose during cross-examination." *State v. Baymon*, 336 N.C. 748, 754, 446 S.E.2d 1, 4 (1994) (citing *State v. Price*, 301 N.C. 437, 452, 272 S.E.2d 103, 113 (1980)).

Defense counsel initiated testimony concerning Jorge's statements to Little during cross-examination. Defendant concedes "this opened the door for the State to elicit any alleged statements made by Jorge." The State was entitled to introduce evidence to explain the

statement on redirect. *Id.* Little's testimony provided that explanation. This assignment of error is overruled.

## B. Ineffective Assistance of Counsel

**[2]** Defendant argues that defense counsel was ineffective by: (1) eliciting information about Jorge's statement directly from Little; (2) eliciting information from Stitt regarding his involvement in a gang and time spent in jail; and (3) failing to object when a police officer testified that Stitt had told him defendant was a member of a gang.

In *Strickland v. Washington*, the United States Supreme Court provided a two-prong test for a defendant to establish ineffective assistance of counsel. 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693 (1984). The test requires:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.*

Our Supreme Court has stated, "this court engages in a presumption that trial counsel's representation is within the boundaries of acceptable professional conduct" when reviewing ineffective assistance of counsel claims. *State v. Roache*, 358 N.C. 243, 280, 595 S.E.2d 381, 406 (2004). In *State v. Lowery*, the Court stated, "[w]e ordinarily do not consider it to be the function of an appellate court to second-guess counsel's tactical decisions." 318 N.C. 54, 68, 347 S.E.2d 729, 739 (1986).

Defendant admits his counsel's decision to ask Little about Jorge's statements was an apparent tactical decision. We will not "second-guess counsel's tactical decisions." *Id.* Even if defense counsel erred in eliciting the testimony from Little and Stitt and in failing to object to the police officer's testimony, the error was not "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Washington*, 466 U.S. at 687, 80 L. Ed. 2d at 693. This assignment of error is overruled.

### 3. Detective Henson's Testimony

**[3]** Jorge did not testify at trial. Detective Henson testified that he interviewed Jorge on 11 March 2003. Over objection, the prosecutor elicited the following testimony:

> Q. As a result of that interview, please state whether or not you considered Jorge to be a material witness against the defendant.
>
> A. Yes, Sir, I did.

Defendant argues the Detective Henson's testimony that Jorge would have been a "material witness" was based on hearsay statements he elicited from Jorge in violation of defendant's Sixth Amendment right of confrontation. Defendant contends Detective Henson's testimony regarding Jorge constitutes hearsay because Detective Henson "was testifying as to the content of Jorge's statement, and Jorge was not available for cross-examination at trial."

Under *Crawford v. Washington,* the confrontation clause prohibits testimonial statements from being admitted into evidence when the declarant is unavailable at trial and was not subject to cross-examination when the statement was made. 541 U.S. 36, 59, 158 L. Ed. 2d 177, 197 (2004) ("Testimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine.").

In *Schaffer v. State,* the Court of Criminal Appeals of Texas held a police officer's testimony regarding information he received out of court from an unavailable witness in the course of his investigation was inadmissible hearsay. 777 S.W.2d 111 (Tex. Crim. App. 1989). The defendant claimed to be a police informant when police officers found him inside a van that contained peyote, a controlled substance. *Id.* at 112. In attempting to disprove the defendant's status as a police informant, the State called Officer Segovia to testify. *Id.* Officer Segovia testified that as a result of his investigation he did not think the state should drop the case against the defendant:

> Q. Officer Segovia, when was the first time you heard the name of—a person by the name of Jimmy Seals?
>
> A. This morning.
>
> Q. And who, if anybody, informed you of that name?
>
> A. You did, sir.

Q. And were you able to contact Officer Seals?

A. Yes, sir.

Q. And when was this?

A. This morning.

Q. And did you have occasion to talk to him?

A. Yes, sir, I did.

Q. Without telling us what he told you, Officer Segovia, would you, at this time, ask the State to drop charges against Mr. Schaffer?

A. No, sir.

*Id.* at 113. Mr. Seals was not subpoenaed for trial and did not testify. *Id.* The court stated:

In the case before us, the State did indirectly that which it could not do directly—Officer Segovia's testimony informed the jury that Seals told him that appellant was not an informant . . . There is no doubt that the State's sole intent in pursuing this line of questioning was to convey to the jury that Seals had told Segovia that appellant was not an informant.

*Id.* at 114.

In the present case, the State did not seek indirectly to do what it could not do directly. Detective Henson's testimony did not convey to the jury any specific statement Jorge made to Detective Henson. Rather, as a result of his investigation, Detective Henson testified that Jorge would have been a material witness.

When Detective Henson testified, the jury had already heard, without objection, that Jorge had implicated defendant as the murderer. The jury was aware through other testimony that Jorge was staying with defendant and had been with defendant immediately before and after the murder. Moments before the shooting, Jorge was present when defendant asked Little to come with them to murder Morris. Jorge stood as a material witness in defendant's prosecution.

Our Supreme Court in *State v. Covington*, made clear "that counsel must be allowed wide latitude in the argument of hotly contested cases. He may argue to the jury the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law

so as to present his side of the case." 290 N.C. 313, 327-28, 226 S.E.2d 629, 640 (1976) (citing *State v. Monk*, 286 N.C. 509, 212 S.E.2d 125 (1975); *State v. Noell*, 284 N.C. 670, 202 S.E.2d 750 (1974)).

Given the uncontested evidence before the jury about Jorge's knowledge of the shooting, Jorge would have been a material witness. The court did not violate defendant's Sixth Amendment right of confrontation by admitting the evidence. This assignment of error is overruled.

### V. Victim's Identification of Defendant

[4] Defendant argues the trial court erred when it admitted evidence that he was a gang member and was previously in jail.

During Stitt's direct testimony she stated:

Q. Do you recall the detectives asking you if J.R. was involved in a gang?

DEFENSE: Objection

COURT: Overruled

A. Yes.

Q. What did you tell them?

A. He was a crip.

. . . .

Q. Do you recall the detective asking you if J.R. had some problem with Buddy concerning some clothes or something?

A. Yes.

Q. What did you tell her?

A. That before he had went to jail, he had left—

DEFENSE: Objection

COURT: Sustained

A. That he left his speakers at Buddy's house, and when he got back, they weren't there.

DEFENSE: Motion to Strike

COURT: Motion to Strike is Allowed

. . . .

Q. Ms. Stitt, you said that the bandanna was blue.

A. Yes.

Q. And you knew that the Crip colors were blue.

A. Yes.

During cross-examination of Stitt, defense counsel elicited further testimony regarding defendant's time in jail. Following Stitt's testimony, the jury sent a note to the trial court asking:

(1) How does Emily know JR was in a gang?

(2) Was Buddy in a gang?

The prosecutor elicited testimony from Jenkins concerning defendant being in jail and defendant's involvement in a gang. Defendant argues the State should not have presented evidence of defendant's bad character when he neither testified nor introduced evidence of his good character. Defendant contends that evidence that he was in a gang and served time in jail is evidence of bad character and was improperly admitted and resulted in an unfair trial.

Rule 404(b) of the North Carolina Rules of Evidence states:

(b) Other crimes, wrongs, or acts.—Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, *identity*, or absence of mistake, entrapment or accident. Admissible evidence may include evidence of an offense committed by a juvenile if it would have been a Class A, B1, B2, C, D, or E felony if committed by an adult.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2003) (emphasis supplied). Our Supreme Court has stated, "Rule 404(b) is a rule of inclusion, subject to the single exception that such evidence must be excluded if its only probative value is to show that defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Berry*, 356 N.C. 490, 505, 573 S.E.2d 132, 143 (2002).

In *State v. Ruof*, the defendant argued the trial court erred in allowing evidence that he was a gang member. 296 N.C. 623, 252 S.E.2d 720 (1979). Our Supreme Court stated:

Defendant contends that the trial judge erred in allowing testimony relating to defendant's association with "The Outlaws"

motorcycle gang because such evidence was irrelevant and was introduced solely to prejudice the jury. We do not agree. Relevant evidence will not be excluded simply because it may tend to prejudice the jury or excite its sympathy. The witnesses who identified defendant testified that they had seen him at "The Hut" prior to the night in question dressed in "Outlaw" clothes and in the company of other "Outlaws." This testimony was relevant and admissible for the purpose of identifying defendant.

*Id.* at 630, 252 S.E.2d at 725 (citing *State v. Hairston*, 280 N.C. 220, 185 S.E.2d 633, *cert. denied*, 409 U.S. 888, 34 L. Ed. 2d 145 (1972)).

Defendant's identity was at issue at trial. Stitt's familiarity with the gang's color of blue and her knowledge of defendant's involvement in the gang aided her in identifying defendant as the perpetrator. "This testimony was relevant and admissible for the purpose of identifying defendant." *Id.*

[5] Defendant argues that the references made by two witnesses concerning his time in jail violated his right to a fair trial. However, defendant failed to preserve this issue for appeal. Defendant did not assign as error any rulings by the trial court regarding the introduction of any evidence involving his time in jail. N.C.R. App. P. 10(a) (2004); *State v. Diehl*, 353 N.C. 433, 438, 545 S.E.2d 185, 188 (2001) ("The scope of appellate review is limited to those issues raised in an assignment of error set out in the record on appeal, N.C.R. App. P. 10(a), and where no assignment of error can fairly be considered to encompass additional issues that a party seeks to raise at the appellate level, those issues are not properly before the reviewing court."), *cert. denied*, 356 N.C. 170, 568 S.E.2d 624 (2002). We decline to consider this issue.

Defendant failed to show the trial court's allowing admission of testimony regarding his involvement in a gang was an abuse of discretion. This assignment of error is overruled.

## VI. Life Imprisonment Without Parole

[6] Defendant argues the trial court erred when it sentenced him, a sixteen-year-old, to life imprisonment without parole in violation of the United States and North Carolina Constitutions. Defendant contends that because the Supreme Court recently held "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed," sentencing a sixteen-year-old to life imprisonment also vio-

lates the Eighth and Fourteenth Amendments. *Roper v. Simmons*, 543 U.S. 551, 578, 161 L. Ed. 2d 1, 28 (2005). In *Roper*, the Court did not consider life imprisonment of juveniles. Defendant failed to raise this argument at trial and did not assign it as error. Defendant failed to preserve this argument for appeal. This issue is not properly before us and is dismissed.

## VII. Conclusion

The trial court did not err in admitting: (1) Detective Henson's testimony that Jorge was a material witness; (2) Little's statements on redirect concerning what Jorge told him; or (3) evidence that defendant was a gang member and was previously in jail. Defendant failed to preserve for review the issues whether his Eighth and Fourteenth Amendment rights were violated when he was sentenced to life imprisonment without parole. We find no error in defendant's trial or sentence.

No error.

Judges JACKSON and SMITH concur.